In re NATIONAL RURAL UTILITIES COOPERATIVE FINANCE CORPORATION; Rural Telephone Finance Cooperative; Steven L. Lilly; John J. List; Sheldon C. Petersen; R. Wayne Stratton; Fulbright & Jaworski LLP; Greenlight Capital, Inc.; Greenlight Capital LP; Greenlight Capital Qualified LP; Greenlight Capital Offshore Ltd., Plaintiffs

v.

Jeffrey PROSSER; Dawn Prosser; Adrian Prosser; John Raynor, Defendants.

Jeffrey Prosser, Dawn Prosser, Adrian Prosser, John Raynor

v.

National Rural Utilities Cooperative Association, Rural Telephone Finance Cooperative, National Rural Electric Cooperative Association, Sheldon C. Petersen, John J. List, Steven L. Lilly, R. Wayne Stratton, Greenlight Capi-

tal, Inc., Greenlight Capital Qualified, L.P., Greenlight Capital, L.P., Greenlight Capita Offshore, Ltd., Fulbright & Jaworski LLP, Glenn L. English, Deloitte Touche USA LLP, Ernst & Young LLP.

Adversary Nos. 09–52854–JKF [1], 10–50744–JKF.

United States Bankruptcy Court, D. Delaware.

Dec. 15, 2011.

1. Jeffrey Prosser's bankruptcy case is filed in the Bankruptcy Division of the District Court of the U.S. Virgin Islands at Case No. 06–30009.

Etta Ren Wolfe, Laurie Selber Silverstein, Suzanne M. Hill, Potter Anderson & Corroon LLP, Karen B. Skomorucha, Ashby & Geddes, P.A., Matthew P. Ward, Womble Carlyle Sandridge & Rice, LLP, Wilmington, DE, for Plaintiffs.

Lisa Cresci McLaughlin, Stephen A. Spence, Phillips, Goldman & Spence, Wilmington, DE, for Defendants.

Dawn Prosser, pro se.

Adrian Prosser, pro se.

John Raynor, pro se.

Matthew J. Duensing, Stryker, Duensing, Casner & Dollison, St. Thomas, VI, Thomas J. Allingham II, Gregg M. Galardi, Skadden, Arps, Slate, Meagher & Flom LLP, Wilmington, DE, for The Greenlight Entities.

## MEMORANDUM OPINION [2]

**Related to Doc. No. 76, Plaintiff's Motion for Preliminary Injunction Related to Doc. No. 34, Motion for Preliminary Injunction [3]**

**Related to Doc. No. 1, Complaint**

JUDITH K. FITZGERALD,
Bankruptcy Judge.

Before the court are two motions brought by the Plaintiffs in Adversary No. 09–52854 seeking a preliminary injunction to enforce the terms of two general releases (the "Prosser Parties' Release of RTFC" and the "Prosser Parties' Release of Greenlight," *see* Appendices A and B, respectively) [4] and to enjoin further action

---

**2.** This Memorandum Opinion constitutes our findings of fact and conclusions of law.

**3.** The Greenlight Entities were added as movants in the motion filed at Adv. Doc. No. 76 and were not parties to Adv. Doc. No. 34.

**4.** All of the Prosser Parties involved in these two Adversary actions are "releasing parties" under both the Prosser Parties' Release of RTFC, Appendix A hereto, and the Prosser Parties' Release of Greenlight, Appendix B hereto.

The Prosser Parties' Release of Greenlight, Appendix B, provides:

1. *General Definitions.* For purposes of this Agreement, "Affiliate" of a person or

entity means any other person or entity ... With respect to a natural person, such natural person's Affiliates shall also include such natural person's spouse, and their siblings, parents and lineal descendants.

Adv. Doc. No. 1 at Exhibit 4, at 2–3.

The Prosser Parties' Release of Greenlight further provides:

2. Release by the Releasing Parties. Effective as of the date of this Agreement, each of the Releasors, on behalf of the Releasor and the Releasor's respective past, present and future parents, subsidiaries and Affiliates and the respective trustees, beneficiaries, directors, officers,

against Plaintiffs by the Defendants ("the Prosser Parties")[5] that violates the Releases, including, but not limited to, the action filed at Adversary No. 10–50744 ("the RICO action").[6] The motions seeking a preliminary injunction filed in Adversary No. 09–52854 stem from a RICO action filed by the Prosser Parties against these Plaintiffs and others[7] in the District Court of the Virgin Islands (St. Croix Division) (hereafter "VI District Court"), Case No. 08–cv–107. The VI District Court granted the Plaintiffs' motion to refer the matter to the undersigned, concluding that the RICO action was a collateral attack on four related bankruptcy cases pending before the undersigned in the Bankruptcy Division of the VI District Court.[8] The VI District Court found "of particular importance and significance" forum selection clauses in the two general releases at issue applicable to the Prosser Parties. The Releases identified the Bankruptcy Court for the District of Delaware as the forum in which "claims related to the releases must be brought."[9] Case No. 08–cv–107,

> shareholders, partners, members, managers, employees, attorneys, legal counsel, accountants, agents, representatives, administrators, insurers, transferees, heirs, executors, predecessors, successors and assigns of such Releasors and/or such Releasors' past, present and future parents, subsidiaries and Affiliates (collectively, with the Releasors, the "Releasing Parties").
>
> *Id.* at 3.
> The Prosser Parties' Release of RTFC defines "Prosser" as
> 1.12. "**Prosser**" means Jeffrey J. Prosser and all heirs, trustees, agents, successors, assigns, executors, and administrators, and his representative capacity as agent, employee, and/or shareholder of ICC, Vitelco, ICC LLC, and/or ECI, including, but not limited to, his capacity as the indirect beneficial owner, Chief Executive Officer, President, and Chairman of the Board of ICC, member [of] the Board of Vitelco, member and sole managing member of ICC LLC, and as guarantor of ICC owing to RTFC.
> Adv. Doc. No. 1 at Exhibit 3, at ¶ 1.12.

**5.** The Prosser Parties are Jeffrey Prosser, Dawn Prosser, L. Adrian Prosser, John P. Raynor. They are the plaintiffs in the RICO action at Adversary No. 10–50744 and are the defendants in Adversary No. 09–52854.

**6.** In the brief filed by Plaintiffs, Adv. Doc. No. 36, in support of the first motion for preliminary injunction filed in this Adversary, Adv. Doc. No. 34, Plaintiffs asked that the Prosser Parties be enjoined "from prosecuting the Virgin Islands [RICO] Action, and the claims, causes of action, or actions asserted therein, during the pendency of the above-captioned lawsuit, and grant Plaintiffs all other relief to which they may be entitled." Adv. Doc. No. 36, Brief in Support of Motion for Preliminary Injunction, at 34.

In the Brief in Support of the Motion for Preliminary Injunction filed at Adv. Doc. No. 76, Attachment 1, Plaintiffs broadened their request, seeking to "enjoin Defendants from prosecuting the Virgin Islands [RICO] Action, as well as any other claims, causes of action, or actions in violation of the Releases, and grant Plaintiffs all other relief to which they may be entitled." *Id.* at 40.

**7.** Defendants in the RICO action which are not party to this motion are Deloitte Touche USA, L.L.P., Ernst & Young, L.L.P., Rural Telephone Finance Cooperative and Glenn L. English.

**8.** Those cases are Emerging Communications, Inc., Bankr.No. 06–30007, and Innovative Communication Company, LLC, Bankr.No. 06–30008, jointly administered at 06–30008, Jeffrey J. Prosser, Bankr.No. 06–30009, and Innovative Communication Corporation, Bankr.No. 07–30012.

**9.** The Prosser Parties appealed the reference order and one entered by the District Court for the District of Delaware, Case No. 09–111, Doc. No. 56 (Motion for Reconsideration denied, Doc. No. 61), transferring this injunction action to the Bankruptcy Court for the District of Delaware. The Prosser Parties' appeal to the Court of Appeals for the Third Circuit was dismissed for lack of jurisdiction. *See* Case Nos. 09–4683 (appeal from VI District Court), 09–4684 (appeal from Delaware District Court), order dated March 30, 2010,

Doc. No. 176, at 2. The VI District Court transferred the RICO action to the U.S. District Court for the District of Delaware (Delaware District Court) where it was assigned Case No. 10–201. The Delaware District Court referred the RICO and preliminary injunction actions [10] to the Bankruptcy Court for the District of Delaware where they were assigned Adversary Nos. 10–50744 and 09–52854, respectively. The disposition of this motion for preliminary injunction resolves the RICO action as well. References herein to "Adv. Doc. No." refer to Adversary No. 09–52854 unless otherwise stated.

The Delaware District Court, in referring this injunction matter to the undersigned, summarized the history leading to this adversary proceeding. Our recitation of the facts borrows heavily from the Delaware District Court's narrative, *see National Rural Utilities Co-op. Finance Corp. v. Prosser*, 435 B.R. 27, 30–32 (D.Del.2009), (09–cv–111 (D. Del.)), *reconsideration denied* 2009 WL 4334815 (D.Del. Dec. 01, 2009), as well as from case history recited by the parties, and from proceedings before this court over the past five years.

The current matter arises from two intertwining sets of events. The first set of events stems from a 1998 transaction in which Debtor Innovative Communication Company, LLC, ("ICC") (VI Bankr.No. 06–30008) took Debtor Emerging Communications, Inc., ("EmCom") (VI Bankr.No. 06–30007) [11] private. ICC, which, at the time, owned 52 percent of EmCom, bought EmCom's publicly owned shares. After the privatization transaction was complete, the Greenlight Entities [12] sued ICC, Debtor Jeffrey Prosser, John P. Raynor,[13] EmCom, and others in the Delaware Court of Chancery for breach of fiduciary duty. The Greenlight Entities sought, *inter alia*, appraisal of their shares. In June 2004, the Chancery Court found Prosser and Raynor liable for breach of fiduciary duty and entered judgments against them ("the Greenlight judgments"). The Greenlight judgments, with interest, total more than $160 million. Case No. 09–111 (D. Del.), Doc. No. 55, Memorandum Opinion of August 7, 2009, at 5, published at 435 B.R. 27, 30 (D.Del.2009). In February 2006, after ICC, EmCom, and Prosser failed to pay the Greenlight judgments, the Greenlight Entities filed involuntary chapter 11 petitions against ICC, EmCom, and Prosser in the United States Bankruptcy Court for the District of Delaware. Venue of the

order denying petition for rehearing and rehearing *en banc* entered October 12, 2010. Certiorari was denied by the United States Supreme Court on March 21, 2011, Case No. 10–894.

10. The injunction action in the Delaware District Court was assigned Case No. 09–cv–111.

11. ICC and EmCom have been administratively consolidated at Bankr.No. 06–30008.

12. The "Greenlight Entities" are all those listed in the caption of Adversary No. 09–52854 and Adversary No. 10–50744: Greenlight Capital, Inc.; Greenlight Capital LP; Greenlight Capital Qualified LP; and Greenlight Capital Offshore Ltd.

13. John Raynor was a member of the Board of Directors of ICC, EmCom, New ICC, and the Virgin Islands Telephone Corporation (a wholly owned subsidiary of ICC). *See* Amended Complaint filed by Prosser Parties, 08–cv–107, Doc. No. 50, at 76, 78. He also was Prosser's attorney, and served as attorney and was a former director of Innovative Communication Corporation ("New ICC"), VI Bankr.No. 07–30012. *See* Adv. No. 09–52854, Adv. Doc. No. 18 at 2; 08–cv–107, Doc. No. 1 at 3. Raynor is a Chapter 7 debtor in another jurisdiction and, although he received a discharge in October of 2005, his case has not been closed. *See* Case No. 04–83112, Bankruptcy Court, District of Nebraska.

proceedings was transferred to the Bankruptcy Division of the VI District Court.

The second set of events stems from loans made by Rural Telephone Finance Cooperative ("RTFC") to ICC between 1987 and 2001. The Virgin Islands Telephone Corporation ("Vitelco"), a nondebtor and the largest and most significant source of revenue for ICC and related companies, is the sole provider of local wired telephone services for the U.S. Virgin Islands. Additionally, Vitelco provides certain long-distance and related telecommunication services in the U.S. Virgin Islands.[14]

Vitelco was a member of RTFC. RTFC made several loans to ICC (Vitelco's parent) totaling in excess of $500 million. In connection with these loans, RTFC obtained various guaranties and security interests from others, including ICC, EmCom, and Prosser. In April 2003, RTFC and ICC negotiated amended loan agreements and, in connection therewith, RTFC obtained additional guaranties and security interests from, *inter alia*, EmCom and Prosser.

In 2004, RTFC sued ICC for defaulting under the amended loan agreement. ICC and Vitelco countersued National Rural Utilities Cooperative Finance Corporation ("CFC") and RTFC.[15] Protracted litigation ensued between CFC/RTFC, on one side, and Prosser, Raynor, and others on the other side. By 2006, there were eight lawsuits pending in the VI District Court between CFC and/or RTFC and Prosser and/or his companies ("RTFC loan default litigation").[16]

During the course of the RTFC loan default litigation, Prosser and his companies asserted claims against most of the Plaintiffs. The claims were premised on a core set of allegations: that CFC unlawfully "controls" and "manipulates" RTFC; that CFC and RTFC have engaged in a long-standing "scheme" to subsidize RTFC and to "misappropriate" RTFC's and its members' funds while interfering with ICC's ability to perform its loan obligations to RTFC; and "retaliation" against Prosser and his companies as a result of Prosser's having discovered this "scheme." Vitelco and ICC also asserted claims against CFC, RTFC, and the Greenlight Entities premised on some of these same allegations along with allegations that the Greenlight Entities' commencement of the Delaware bankruptcy proceeding was part of a "joint venture" between the Greenlight Entities and RTFC to take over Vitelco and ICC.

In 2006, the two sets of events became intertwined through a series of settlement agreements. On April 26, 2006, the parties involved in the RTFC loan default litigation and the Delaware bankruptcy proceedings executed the Terms and Conditions of Settlement of Claims of RTFC, CFC, Prosser Parties, and Greenlight Entities (the "Terms and Conditions"). In addition to the 2006 Terms and Conditions, two other agreements were executed: the Release in Full of RTFC, CFC, Lilly and List (the "Prosser Parties' Release of RTFC") and a release of the Greenlight Entities (the "Prosser Parties' Release of Greenlight").

Pursuant to the Terms and Conditions, Prosser and his companies' claims in the

---

14. *See* Bankr.No. 06–30008, Doc. No. 24 at 7, ¶ 11.

15. RTFC is a member of CFC, a cooperative formed to make loans to its members to facilitate acquisition, construction and operation of electric distribution, generation and transmission facilities. *See* Adv. Doc. No. 1 at 3.

16. *See National Rural Utilities Co-op. Finance Corp. v. Prosser*, 435 B.R. 27, 30–32 (Bnkr. D.Del.2009).

RTFC loan default litigation were dismissed and a final judgment was entered whereby ICC was adjudged liable for $524 million with Prosser, jointly and severally. Prosser's liability was limited to $100 million of the RTFC judgment. All appeals of the Greenlight judgment were dismissed, 435 B.R. at 31,[17] and, at the request of Prosser and his companies, the stay was lifted in the Delaware bankruptcy proceeding to allow implementation of the settlement. *Id.* at 31. Finally, the Terms and Conditions provided that Prosser and his companies could discharge the RTFC and Greenlight judgments for a substantially discounted payment (in the amount of $402 million), if paid in full on or before July 31, 2006. If payment was not timely made, documents put into escrow by RTFC, CFC, and the Greenlight Entities, i.e., the Payment Documentation,[18] which did *not* include the Prosser Parties' Releases of Greenlight and RTFC which are at issue herein, would become void. If the discounted payment had been timely made, the RTFC and Greenlight would have executed a release of the Prosser Parties. *See* Adv. Doc. No. 76, Exhibit P–3 (void release). Prosser and his companies did not make the discounted payment on July 31, 2006, as required by the Terms and Conditions. Instead, Prosser, ICC, and EmCom filed voluntary bankruptcy petitions in the Bankruptcy Division of the VI District Court.[19]

Despite the 2006 settlement, much litigation followed, including an action to determine whether the Terms and Conditions agreement was an assumable contract. (This court's determination that it was not assumable was affirmed on appeal). *See In re Innovative Communication Co., LLC,* 399 B.R. 152 (Bankr. D.V.I.2008); 2008 WL 2275397, (D.V.I., May 30, 2008). The VI District Court

---

**17.** The Greenlight Judgments were issued by the Delaware Chancery Court. *See* 435 B.R. at 30.

**18.** The Payment Documentation was part of the Terms and Conditions. Under the heading of "Payment Documentation" the Terms and Conditions provided:

RTFC, CFC, and the Greenlight Entities shall execute and deliver into escrow such documents and other instruments as are necessary to permit the Prosser Parties to effect the Payment free and clear of any and all claims and liens of RTFC, CFC and the Greenlight Entities (collectively, the *"Payment Documentation"*), including without limitation (a) mutual releases by the Parties, releasing, inter alia, the Parties, all subsidiaries, affiliates and their respective directors, officers, shareholders, partners, members, managers, employees, agents, and representatives, (b) Satisfactions of all judgments by the Greenlight Entities, RTFC and CFC, including those created herein, (c) releases and discharges of liens held by RTFC and the Greenlight Entities, (d) non-disparagement and confidentiality agreements by all Parties, (e) dismissals of the

bankruptcy proceedings with prejudice and (f) in the sole discretion of the Prosser Parties, an assignment to the Prosser Parties or their designee of the judgments and liens of RTFC, provided that any such transfer shall be without any representations or warranties and without recourse. The Payment Documentation shall be released from escrow as provided above.

Bankr.No. 06–30009, Jeffrey J. Prosser, Debtor, Doc. No. 29, at 9–10. *See* Adv. Doc. No. 76 at Exhibit A–6. Because the discounted payment was not made pursuant to the Terms and Conditions, the Terms and Conditions became void and the RTFC and Greenlight release of the Prosser Parties was never in effect. The voided release under the Terms and Conditions can be found at Adv. Doc. No. 76, Exhibit P–3.

**19.** The Greenlight Entities subsequently filed an involuntary petition against New ICC in the Bankruptcy Division of the VI District Court. New ICC was adjudicated a debtor. It is not a party to this injunction action or the RICO action. It is, however, covered by the Prosser Parties' Release of Greenlight and the Prosser Parties' Release of RTFC. *See* note 4, *supra.*

order was affirmed on appeal. *See In re Prosser*, 388 Fed.Appx. 100 (3d Cir.2010). In April 2008, Prosser and Raynor sued CFC and others in the United States District Court for the District of Columbia[20] · based on allegations similar to those made in the RTFC loan default litigation. Also in April 2008, in the Prosser bankruptcy case, Prosser filed objections to claims[21] made by RTFC[22] and the Greenlight Entities[23] raising allegations similar to those made in the RTFC loan default litigation.[24] On December 7, 2008, the Prosser Parties filed suit in the VI District Court against Plaintiffs, repeating the same or similar allegations.[25]

**20.** Case No. 08–cv–687 (D.D.C.), *Jeffrey J. Prosser and John P. Raynor v. Federal Agricultural Mortgage Corporation, U.S. Dept. of Agriculture, and National Rural Utilities Cooperative Finance Corporation.* CFC's unopposed motion to dismiss was granted on May 30, 2008. The motion to dismiss filed by the Federal Agricultural Mortgage Corporation and the U.S. Department of Agriculture was granted January 14, 2009, by the VI District Court which found that Prosser and Raynor had no standing and the court had no subject matter jurisdiction. The complaint in that action alleged, *inter alia*, that, since creating the RTFC, the CFC had controlled the RTFC through unlawful means. The District Court's opinion makes clear that the allegations in that action are based on the same facts as are the RICO adversary before the undersigned; i.e., that ICC discovered the CFC's allegedly improper use of RTFC profits and that RTFC retaliated by foreclosing on the ICC loan, etc. The District Court in the D.C. action based its decision on, *inter alia,* Prosser's and Raynor's "speculative assumptions about the past and future acts and motives of strangers to this suit, and even about market forces." Further, the court noted they had failed to sufficiently allege any of the required elements of standing and, "[w]ithout standing, there is no subject matter jurisdiction. Without subject matter jurisdiction, the complaint must be dismissed." Case No. 08–cv–687, Doc. Nos. 27 (Memorandum) and 28 (Order).

**21.** Both objections should have been dismissed for failure to comply with the Case Management Order in effect in this case inasmuch as they failed to state hearing and objection dates. Nonetheless, the objection to claim at Doc. No. 1555 with respect to RTFC was heard and dismissed after the RTFC filed a motion for sanctions and other relief with respect to it. *See* Bankr.No. 06–30009, Doc. No. 1702, order entered July 29, 2008, Doc. No. 1888. No order was entered regarding Doc. No. 1554 but the objection to claim, filed by attorney Robert F. Craig on behalf of Prosser, should have been dismissed inasmuch as it was filed not in compliance with the Case Management Order in effect in this case. Nonetheless, after a discussion on the record on June 19, 2008, this court determined that the objection to claim had to be filed as an adversary proceeding. The adversary was filed, with Prosser's counsel's firm, Robert F. Craig, P.C., as the named plaintiff, at Adv. No. 08–3051. (Another law firm representing Prosser, Law Offices of Lawrence Schoenbach, filed the adversary on behalf of Robert F. Craig, P.C.) This court dismissed the Adversary and an appeal was filed by the Schoenbach firm on behalf of Robert F. Craig, P.C. Case No. 09–cv–109, D.V.I. That appeal is pending.

**22.** Bankruptcy No. 06–30009, Doc. No. 1555, Jeffrey J. Prosser's Objection … to the Claim of the Rural Telephone Finance Cooperative. Order entered July 29, 2008, Doc. No. 1888, striking objection.

**23.** Bankruptcy No. 06–30009, Doc. No. 1554, Jeffrey J. Prosser's Objection to the Claims of Greenlight Capital Qualified, L.P., Greenlight Capital, L.P., and Greenlight Capital Offshore, LTD. A previous objection to the Greenlight Entities' claim filed by Prosser and the corporate Debtors was dismissed. *See* Doc. Nos. 247, 380, 947 in Bankr.No. 06–30009.

**24.** The RTFC loan default litigation claims were dismissed with prejudice.

**25.** Case No. 08–cv–107, D.V.I. (St. Croix Division), Civil RICO Complaint. The matter was referred to the Delaware District Court (Case No. 10–201) which referred it to the Bankruptcy Court for the District of Delaware where it was assigned Adversary No. 10–50744. Adversary No. 09–52854 was filed in order to dispose of Adv. No. 10–50744. Note

■ Most, but not all, of the defendants in the RICO action (the Plaintiffs [26] herein) filed an action in the District Court for the District of Delaware seeking to enjoin the RICO action.[27] The Delaware District Court referred the injunction action to the undersigned. For the reasons which follow we find that preliminary and permanent injunctions are appropriate. With respect to a preliminary or permanent injunction, Plaintiffs have the burden of proving the basis for a preliminary or permanent injunction. *See, e.g., Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 90 (3d Cir.1992).

■ In order to issue a preliminary injunction, the court must find that the plaintiff is likely to succeed on the merits, that there is an imminent threat of irreparable harm, that the balance of the equities favors injunctive relief, and that the public interest is served by granting the relief. *See Chester ex rel. NLRB v. Grane Healthcare Co.*, 666 F.3d 87, 89–90 (3d Cir.2011).

■ While the standard for a preliminary injunction requires the court to find a likelihood of success on the merits, in "deciding whether a permanent injunction should be issued, the court must determine if the plaintiff has actually succeeded on the merits (i.e. met its burden of proof.)" *CIBA–GEIGY Corp. v. Bolar Pharmaceutical Co., Inc.*, 747 F.2d 844, 850 (3d Cir. 1984).

In summary, because all the allegations in the RICO action fall within the purview of the Prosser Parties' Releases of RTFC and Greenlight and, therefore, there is nothing to be tried, we find that the Plaintiffs have met their burden of proof as to their right to relief and thus grant a preliminary and a permanent injunction. A more detailed analysis follows.

■ With respect to the elements for finding a preliminary injunction, we find that the Plaintiffs in this action have established the right to the relief sought by virtue of the Releases they obtained from the Prosser Parties as a condition of granting Prosser a significantly discounted payment in satisfaction of their much larger judgments, on the condition that the discounted payment be paid by a date certain. That date passed without payment but the Releases of the RTFC and Greenlight by the Prosser Parties were in effect as of the time the settlement that provided for the

that the matter was dismissed as to NRECA and Glenn L. English by order dated September 30, 2009, Case No. 08–cv–107, District Court of the Virgin Islands (St. Croix Division), Doc. No. 162. Nonetheless, NRECA and Glenn L. English remained in the caption when the matter was transferred to Delaware. *See* Case No. 09–cv–111 (D. Del.).

26. Ernst & Young, Deloitte Touche, Glenn L. English and NRECA did not join as Plaintiffs in the injunction action when it was refiled in Delaware after the transfer from the VI District Court. Glenn L. English and NRECA had been dismissed from the RICO action by the VI District Court. Nonetheless, the Prosser Parties named them as defendants when the RICO action was refiled in Delaware. Ernst & Young and Deloitte Touche had filed motions to dismiss in the RICO action but there is no record of adjudication of their motions. They did not file motions to dismiss in Adv. No. 09–52854 in which these motions for preliminary injunction are pending.

27. *See* 09–cv–111 (D. Del.), related to 10–cv–201 (D. Del.) (transfer of RICO Case No. 08–cv–107 from VI District Court). The complaint filed in the Delaware District Court at 09–cv–111 was filed as an action for declaratory judgment, breach of contract, specific performance, and an All Writs Act Injunction. Upon transfer by the Delaware District Court to this court, certain Plaintiffs filed a motion for preliminary injunction at Adv. Doc. No. 34. A second motion for preliminary injunction was filed at Adv. Doc. No. 76 on behalf of all the Plaintiffs in Adv. No. 09–52854, although the docket entry itself does not name them all.

discounted payment (the Terms and Conditions) was reached. Thus, the Plaintiffs have established not only a likelihood of success on the merits but have met their burden of proving actual success on the merits.

As to the next element, we find that permitting pursuit of a RICO action, or any other action based upon allegations that have been released, is clear and irreparable harm to those intended to benefit from the Releases. The expenditure of time by the Plaintiffs and their counsel in management of, and the effort and money spent in, litigating multiple suits commenced by the Prosser Parties is huge and the need to concentrate on those actions repetitiously cannot be justified.

Further, the balance of the equities favors ending the litigation at the earliest possible moment, given that numerous actions involving the same or substantially similar facts, theories, and actions have already been brought, litigated, and lost by the Prosser Parties.

Finally, the public interest is served by conserving judicial resources so that all of the judges and staff involved in these actions can concentrate on matters that, unlike these, have not already occupied the time and attention of courts in several jurisdictions. Moreover, the public interest is served by enforcing the Releases voluntarily entered into by the Prosser Parties who received the advantage of time to pay a judgment exceeding $524 million, plus accrued and accruing interest, for $402 million. The Prosser Parties' inability to comply with their own bargain should not and does not invalidate the effect of the Releases they voluntarily gave to RTFC and Greenlight—i.e., the benefit of being relieved of nearly continuous litigation with the Prosser Parties.

Thus, having satisfied the standard for a grant of preliminary injunction, and having further met their burden of proof as to actual success on the merits, we find Plaintiffs are entitled to preliminary and permanent injunctive relief.

We note that the Prosser Parties contend that because they are alleging conduct by certain Plaintiffs herein that occurred after the Releases were executed, the Prosser Parties' Releases of RTFC and Greenlight do not apply to the RICO action. However, the Releases by their terms apply to future conduct and the Prosser Parties' allegations all relate, as stated above, to the same core facts and events that predate the Releases; i.e., the 1998 privatization of EmCom and the loans made by RTFC to ICC between 1987 and 2001. A release precluding future matters fairly within the contemplation of the parties at the time the release is given is enforceable. *See Camiolo v. State Farm Fire and Cas. Co.*, 334 F.3d 345, 362 (3d Cir.2003).

The Prosser Parties contend that the Prosser Releases of the RTFC and Greenlight were voided when the Terms and Conditions agreement became void because Prosser failed to make the payment under that agreement.[28] That is not so. What became void when Prosser failed to make the payment under the Terms and Conditions was the RTFC and Greenlight

---

28. Because the payment was not made, by order dated August 2, 2007, this court ruled that the Terms and Conditions agreement was not assumable. *See* VI Bankr.No. 06–30009, Doc. No. 725, Order dated August 2, 2007 (the Terms and Conditions are not assumable for reasons expressed on the record on July 19, 2007). The order was affirmed on appeal. *In re Innovative Communication Co., LLC*, 399 B.R. 152 (Bankr.D.V.I.2008); 2008 WL 2275397 (D.Vi., May 30, 2008). The Court of Appeals affirmed the VI District Court order. *See In re Prosser*, 388 Fed.Appx. 100 (3d Cir. 2010).

release in favor of the Prosser Parties that was to be part of the Payment Documentation. Adv. Doc. No. 76, Exhibit P–3. The Payment Documentation was to be placed in escrow as part of the Terms and Conditions. *See* Escrow Agreement, Adv. Doc. No. 76, Exhibit P–2. *See also* note 18, *supra.* *See also* Declaration of William R. Greendyke, Esq., of Fulbright & Jaworski L.L.P. in Further Support of Plaintiffs' Motion for Preliminary Injunction ("Greendyke Declaration"), Adv. Doc. No. 76, Exhibit P at 2–3, ¶¶ 10–14.[29] The Payment Documentation was to be taken out of escrow only if the Terms and Conditions were met. Payment under the Terms and Conditions did not occur and the Payment Documentation was not released from escrow, has expired and is of no force and effect. The release of Jeffrey Prosser by the RTFC and Greenlight, Adv. Doc. No. 76, at Exhibit P–3, which was voided when the payment under the Terms and Conditions was not made, is not either of the two releases relied on by Plaintiffs here (the "Prosser Parties' Release of RTFC," Adv. Doc. No. 1, Exhibit 3, and the "Prosser Parties' Release of Greenlight," *id.* at Exhibit 4) and is not involved in this injunction action. *See* Greendyke Declaration, Adv. Doc. No. 76, Exhibit P, at 4–5, ¶¶ 11–14. The two Releases by the Prosser Parties of the RTFC and Greenlight that are relied on by the Plaintiffs in this action expressly provide that they are *not* contingent on Prosser's payment under the Terms and Conditions. The Prosser Parties' Releases of the RTFC and Greenlight were executed as consideration for the Plaintiffs' agreement under the Terms and Conditions to limit Prosser's personal liability on the final judgment to $100 million, *regardless* of any payments that may have been made by the corporate entities.

In denying Jeffrey Prosser's motion to stay pending appeal of this court's order converting his bankruptcy case to a chapter 7, this court explained the effect of the decision that the Terms and Conditions agreement was not assumable:

> . . . this Court concluded that even if the Terms and Conditions were executory, Prosser could not assume the agreement because assumption under § 365 would require him to assume all the benefits and the burdens of the Terms and Conditions, including but not limited to, the self-effectuating termination provision which states "[i]f, however, the Payment is not made on or before the Payment Deadline, then effective upon 12:01 a.m. on August 1, 2006, the Payment Documentation shall be returned to RTFC and the Greenlight Entities and shall become void and of no further force or effect." Terms and Conditions at 5. Prosser's failure to meet the Payment Deadline nullified the releases of judgments and liens, leaving Prosser and New ICC liable for the full amount of the RTFC and Greenlight judgments. Consequently, any ostensible assumption of the Terms and Conditions would provide absolutely no benefit to the various bankruptcy estates. Even if the District Court were to conclude that this Court erred in holding that the Terms and Conditions is not executory, this Court's alternative ruling that the Payment Documentation is void, constitutes an inde-

---

**29.** The Greendyke Declaration was filed in the District Court for the District of Delaware, Case No. 09–cv–111 at Doc. No. 50. The reference in the Greendyke Declaration to "Exhibit C" is to the RTFC and Greenlight Release of the Prosser Parties, filed in Adv. No. 09–52854 at Adv. Doc. No. 76, Exhibit P–3. This is the release that was voided when payment was not made pursuant to the Terms and Conditions. *See* Greendyke Declaration, Adv. Doc. No. 76, Exhibit P, at 4–5, ¶¶ 11–14.

pendent ground for the District Court to affirm the Terms and Conditions Order.

*In re Innovative Communications,* 390 B.R. 184, 189 (Bankr.V.I.2008).

The Prosser Parties contend that their RICO allegations reflect "new events" [30] and, therefore, the injunction sought by the Plaintiffs herein must be denied. The contention has no merit. The allegations in the RICO complaint all relate to the subject matter of the prior litigation, the resolution of which resulted in the execution of the Prosser Parties' Releases of the RTFC and Greenlight. This is so, notwithstanding the reference in the RICO complaint to financial transactions between and among Prosser, his companies, and the National Rural entities, or the reference in the RICO complaint to "continuing acts" that allegedly fall under RICO. The RICO action at Adv. No. 10–50744 merely updates the old charges against the RTFC, Greenlight and others. The allegations are the same, based on the 1998 privatization of EmCom and the 1987–2001 RTFC loans. They are just associated with more current dates.

The Prosser Parties allege wrongdoings occurring after the execution of the Releases, including, but not limited to, SEC filings by CFC, which the Prosser Parties contend violate security law requirements.[31] The Prosser Parties argue that either their Releases of Greenlight and RTFC died with the expiration of the Terms and Conditions or that the Terms and Conditions settlement agreement remains viable is without merit. The Terms and Conditions matter has been adjudicated by this court, the District Court, and the Court of Appeals, all against the Prosser Parties.[32] The Prosser Parties' Releases of Greenlight and RTFC are alive and operative. They protect all of the Plaintiffs in this injunction action and all of the Defendants in the RICO action from further actions by Prosser and his co-parties.

Plaintiffs' Opening Brief in Support of Motion for Preliminary Injunction, Adv. Doc. No. 76 at Attachment 1, accurately details the history of the parties' relationship, the litigation, and the terms of the Prosser Parties' Releases of Greenlight

---

**30.** We note that each of the Prosser Parties are "Releasing Parties" under the Prosser Parties' Releases of RTFC and Greenlight because they are named in the Releases, signed them, or fit within the definition of "Releasing Parties." That definition includes, *inter alia,* employees, shareholders, affiliates and members of Prosser's companies. The Plaintiffs herein are each "Released Parties" either by name or by definition. For example, the CFC, RTFC, Lilly, List and Greenlight are specifically named as Released Parties. Petersen and Stratton as well as Lilly and List are included within the Release of CFC and RTFC officers, directors, employees, shareholders, agents, and representatives. Fulbright & Jaworski LLP, Greenlight's counsel, are likewise released as agents, representatives, counsel and attorneys. *See* note 4 and accompanying text, *supra.*

**31.** There is no basis asserted by the Prosser Parties that they have standing to bring such

an action. Regardless, the propriety, or lack thereof, of filings with the SEC, or the applicability of, or adherence to, Generally Accepted Accounting Principles, have been raised before and have been released. These and other issues are raised in Raynor's Memorandum of Law Opposing Plaintiffs' Motion for Injunction, Adv. Doc. No. 128. The Prosser Parties also argue that events such as 10–K filings by CFC and its related entities that pre- and post-date the Releases constitute new acts that fall outside of the Releases. The argument is without merit inasmuch as every fact, event or allegation raised by the Prosser Parties relates to the transactions between and among them and these Plaintiffs, all of which were released.

**32.** *In re Prosser,* 388 Fed.Appx. 100 (3d Cir. 2010).

and RTFC. We adopt Plaintiffs' recitation, including, but not limited to, the following:

• That the allegations in the Virgin Islands RICO Action are nearly identical to those asserted in complaints and counterclaims filed by Defendant Prosser and his companies in 2005 and 2006 in connection with the RTFC Loan Default Litigation—claims that were dismissed with prejudice and forever released. By way of example:

• In 2005, Prosser's company ICC alleged that "RTFC and its management were misappropriating funds that should have been distributed to its [telephone] members." In 2009, Defendants allege that "CFC embezzles funds legally belonging to RTFC and the RTFC Telephone members."

• In 2005, Prosser's company ICC alleged that "CFC and RTFC manipulated their financial statements for the benefit of CFC, including the consolidation of CFC's and RTFC's financial statements," and that "CFC unjustifiably and improperly changed its segment reporting without sufficient explanation." In 2009, Defendants allege that RTFC's financial statements "are false and deceptive," including because "the Consolidated Financial Statements" of National Rural and RTFC are "materially misleading," and because the "change" in "Segment Methodology" created a "material and intentional departure from GAAP."

• In 2005, Prosser's company ICC alleged that "RTFC and certain officers decided to retaliate through litigation, . . . [premised on] alleg[ations] that ICC and Vitelco had defaulted on their loan obligations," which had the intent of seeking to "wrest control of ICC from its Chairman and founder, Jeffrey Prosser." Also in 2005, Prosser himself alleged in a counterclaim that "RTFC management decided it wanted to replace Prosser and the rest of ICC's management," and that RTFC sued ICC for defaulting on its loan as part of a "scheme to try to starve 'Prosser's companies' of funds and cause ICC to collapse." In 2009, Defendants allege that "[t]he June 2004 Foreclosure, itself a retaliatory action, coupled with a pattern of retaliatory and extortionary acts eventually resulted in the taking of ICC from the Prossers."

• In 2006, Prosser's company ICC alleged that "RTFC has (1) admitted to substituting pages in the Loan Agreement by and between ICC and RTFC, and (2) admitted to destroying the originals after doing so." In 2009, Defendants allege that "[w]ithout the knowledge or consent of ICC," RTFC's general counsel "removed the signature pages from both originals of the Authentic 2001 Loan Agreement and attached them to a different version of the agreement, the False 2001 Loan Agreement."

Adv. Doc. No. 76, Attachment 1, at 26–27. With respect to alleged securities laws violations, note the following:

• In 2005, Case No. 05–cv–168 (D.V.I.), *Innovative Communication Corporation v. RTFC, et al.*, the amended complaint alleged, *inter alia*, that CFC, in its first quarterly SEC filing, improperly changed its segment reporting to falsely create the impression that CFC and not RTFC was operating at a profit. Prosser Party Raynor alleged in his motion to dismiss the motion for preliminary injunction that the way the CFC reported the ICC loan in 2009 in its 10–Q departed from Generally Accepted Accounting Principles constituted a fraud on CFC's investors.

• In the District of Columbia action, Case No. 08–cv–687, filed by Prosser

Parties Jeffrey J. Prosser and John P. Raynor against CFC and others, *see* note 20, *supra*, the Prosser Party plaintiffs in that action alleged improprieties in CFC's 2002 10–K reports, departure from GAAP principles, and other similar actions. The RICO adversary at Adv. No. 10–50744 with respect to which the instant injunction action was filed makes the same allegations, only the year(s) of the alleged violations have been changed.

**33.** The Prosser Parties' Release of Greenlight applies to everything "from the beginning of the world up to and including the date of this Agreement." *See* Appendix B, Prosser Parties' Release of Greenlight, at ¶ 2. It also applies to release all past, present and future

claims, costs, expenses, accounts, offsets, demands, causes of action, suits, debts, controversies, agreements, damages (including, without limitation, all actual damages, consequential damages, statutory damages, punitive and exemplary damages, prejudgment and post-judgment interest, attorney's fees and costs of court, and all other damages or losses recoverable now or at any later time under applicable law), judgments, obligations, defenses, promises, covenants, reckoning, contracts, endorsements, bonds, specialties, trespasses, variances, extents, executions and liabilities of any kind or nature whatsoever, in law, equity, or otherwise, whether known or unknown to any Party at this time, asserted or unasserted, liquidated or unliquidated, absolute or contingent, which any of the Releasing Parties had, may have, now has or which may hereafter accrue or otherwise be acquired against any of the Released Parties on account of, arising out of, or relating to, or alleged or asserted or which could have been alleged or asserted or involving any matter occurring at any time from the beginning of the world up to and including the date of this Agreement.

*Id.* The conduct complained of in the RICO matter relates to the subject matter of what was intended to be released—i.e., the litigation predating the filing of the bankruptcy petitions and the settlements which effected the resolution of those matters.

The Prosser Parties' Release of RTFC is similarly all-encompassing. It defines "All Claims" as referring:

• In Case No. 08–cv–107 (D.V.I. RICO action) Doc. No. 1, and Adv. No. 10–50744 (Bankr. D. Del. RICO action) Adv. Doc. No. 25 (docketed as "Notice of Service Complaint for Civil RICO"), alleged various improprieties regarding 2001 and 2002 10–K and 10–Q statements, including noncompliance with GAAP principles and accusations regarding representation of aspects of the CFC/RTFC loans for years 2003–2005.[33] In Case No. 10–cv–201 (D. Del.), Second

to any and all claims, demands, damages (including, without limitation, all actual damages, consequential damages, statutory damages, punitive and exemplary damages, prejudgment and post-judgment interest, attorneys' fees and costs of court, and all other damages or losses recoverable now or at any later time under applicable law), actions of any character or type (including, but not limited to, class action or derivative lawsuits or proceedings, actions based on violations of local, state and/or federal statutes and regulations, malfeasance, non-feasance, fraud, intentional torts, malicious conduct, including, but not limited to relations, libel, slander, defamation, wrongful use of civil proceedings and abuse of process, breach of contract, bad faith, breach of fiduciary duty, lender liability, contribution, conspiracy, retaliatory conduct, or any combination thereof), and causes of action of whatever nature, in law or equity (including declaratory and injunctive relief), known or unknown, that the Releasing Parties have, or ever have had, or may in the future have, against the Released Parties related to, directly or indirectly, any and all of the facts, events, transactions, occurrences, course of dealings and/or disputes between the Releasing Parties and the Released Parties occurring prior to the date of this Release or occurring after the date of this Release but which involve the same facts, events, transactions, occurrences, course of dealings and/or disputes existing as of the date of this Release whether known or unknown arising out of the relationships or alleged relationships between or among the Releasing Parties and the Released Parties as member, cooperative, borrower, lender, patron, third-party beneficiary, investor, issuer of security or any

Amended Complaint (253 pages), Exhibit 1 to Doc. No. 172, motion for leave to file second amended complaint, adds the same allegations but for the years 2008 and 2009.

Attached hereto is Exhibit I to the Motion for Preliminary Injunction, Adv. Doc. No. 76, which is a chart [34] comparing claims made in the RICO complaint, to which this Motion for Preliminary Injunction applies, to those raised in prior dismissed actions.[35]

We find that, on the merits, Plaintiffs have established entitlement to both a preliminary and permanent injunction. The Prosser Parties' Releases of RTFC and Greenlight are clear and are all-encompassing. The RICO action that the Prosser Parties seek to pursue is based only on those claims and causes of action that were the subject of those Releases. The fact that the Prosser Parties have updated their citations to, for example, Forms 10–K and 10–Q filed by CFC in more recent years and have alleged that the RTFC issued fraudulent financial statements in years after the date of the Releases does not change the fact that the conduct complained of relates only to the events and causes of action and claims that they released. We also find that imminent irreparable harm to Plaintiffs will result if the Prosser Parties pursue litigation with respect to released matters. The balance of the equities favors injunctive relief—a party should not have to continually defend

conduct that was released. There is no harm to the Prosser Parties. The Prosser Parties are sophisticated litigants and they entered into the Releases of RTFC and Greenlight with the advice of counsel. The public interest is served by granting relief to Plaintiffs inasmuch as parties to releases are entitled to rely on the bargains they make. *See Chester ex rel. NLRB v. Healthcare Co.*, 666 F.3d 87, 89–90 (2011). The standard for issuance of a preliminary injunction is met in this case.

Further, under the egregious circumstances of this case, the Plaintiffs have met their burden of proof as to the merits and thus a permanent injunction is in order. *See ACLU v. Black Horse Pike Regional Bd. of Education*, 84 F.3d 1471, 1477 (3d Cir.1996). The many actions that were settled and for which the Prosser Parties' Releases of RTFC and Greenlight were issued were terminated long ago. Jeffrey Prosser has been removed from the management of the corporate Debtors and all the cases have trustees in place. There are no causes of action to pursue that were not released.

Inasmuch as there is no basis upon which the RICO action can be brought due to the Releases, we will grant both preliminary and permanent injunctions and dismiss the RICO action accordingly.

Appropriate orders will be entered.

---

other relationship, as well as any and all consequences thereof, each and all, even though one or more of those consequences are not specifically identified herein, other than, in any such case, the Excluded Claims (as hereinafter defined).
Adv. Doc. No. 1, Exhibit 3, Prosser Parties' Release of RTFC at 3–4, ¶ 1.18.

**34.** The chart was originally filed in Civil Action No. 08–cv–107 in the District Court of the Virgin Islands as Exhibit I to Doc. No. 77.

**35.** This is the same chart filed in Civ. A. No. 10–cv–201 at Doc. No. 77–21, D. Del.

74

**Comparison Between Claims Made in the RICO Complaint
And in Prior Dismissed Actions**

This chart shows that the claims raised by Plaintiffs' Amended Complaint are the same as the claims raised in prior actions, which were dismissed with prejudice. The allegations listed in the "RICO Claims" column are a sampling of allegations from Plaintiffs' Amended Complaint, and the corresponding "Dismissed Claims" column reflects allegations Plaintiffs' and their affiliated companies made in proceedings that were dismissed with prejudice in prior litigations. These statements are intended to be an illustrative sampling of the allegations made, not an exhaustive list. *See also* Omnibus Mot. at Part II(D).

| RICO Claims | Dismissed Claims |
|---|---|
| • "CFC maintains almost complete control over the operations of RTFC." (¶ 23) | • "CFC totally controls and manipulates the RTFC." ( Am. Compl., Case No. 2005-183., ¶ 5, *see also* id. ¶ 70.<br><br>• "CI Closed RTFC as a target of conclusion..." *Prasvani et al., 2009 WL 102243, at \*2 (D.D.C. Jan. 14, 2009)* |
| • "CFC uses its inordinate control over RTFC to siphon the majority of RTFC's profits from CFC through interest deductions and other contracted arrangements... and thus, CFC embezzles funds legally belonging to RTFC and the RTFC Telephone members by allocating particular income that belongs to RTFC's Telephone members to CFC's Electric members." (¶ 28) | • CFC "redirects RTFC's profits from loans made to its assignment obligations solely to stabilize its electric sector members and to 'curry' up favors' on 'audio sector terms." *Prasvani et al., 2009 WL 102243, at \*2 (D.D.C. Jan. 14, 2009).*<br><br>• "In late 2002, when CFC [] operated the loan RTFC to ICC been 'short,' ICC's principal [] invested in that RTFC and its management to siphon its income-producing funds. That would have taken the Plaintiffs' current there by diverting and distributing these funds to the CFC to lower the interest rate's for CFC's members and to otherwise extend a CFC's so-called — at the expense of RTFC's telecommunications members and to the — cruel of CFC's direct sector members." Am. Compl., Case No. 2005-183. ¶ 7 |

| | |
|---|---|
| • "CFC's unlawful systematic distribution of RTFC and those RTFC Telephone members are subject to income taxes compensated unlawfully defrays the income taxes payable by those CFC Telco members that are the commencement of the erection by CFC pursuant IRC § 7701... CFC bylaws were examined by and approved by IRS as part of its application for tax exempt status. By operating in a manner inconsistent to keep principals as well as CFC's bylaws, CFC is operating in contravention of its tax exemption." (¶¶ 58-59) | • "and document to ICC, and upon information and belief, RTFC and CFC engaged in a scheme to make loans when none to individuals in RTFC and CFC's tax status in a U.S. mainland [] to pay loans as necessary in the Virgin Islands. Point of the reason for RTFC's efforts on ICC and Viteko was to stop CFC's investigation and further investigation of these schemes." *Prasvani Comment, Case No 2004-102, ¶ 42.*<br><br>• "Unbeknownst to FCC, and upon information and belief, RTFC and CFC engaged in a scheme to make loans of ICC and Vitoko which were in violation of RTFC and CFC's tax free status in the US, and have the intent of these schemes is the Virgin Islands. Part of the reason for RTFC's actions on ICC and Vitoko was the sole reduction of these schemes." ICC Second Supp. Comment., Case No 2004-154, ¶ 22. |
| • "The entire content or systematic distortion of RTFC and the RTFC Telephone members is augmented by a pervasive and extensive pattern of accounting fraud to conceal or disguise it and, 2.x section, the source, the ownership, or the control of the proceeds of specified unlawful activity." (¶ 66) "Combining CFC and RTFC, Financial Statements is a material departure from GAAP ('Generally Accepted Accounting Standards') making the Combined Financial Statements manually misleading as and as making the financial information a stability realization." (¶ 67) | • "CFC and RTFC manipulated their financials statements to the benefit of CFC, including the consolidation of CFC's and RTFC's financial statements to mask the fact that CFC created at a loss, while RTFC operated at a substantial and misleading profit. In materially manner fashion, it is improperly made any SEC filing after receipt of a letter from ICC's subsidiary, Vmiko, CFC unjustifiably and improperly stamped its segment reporting with a distant comparison, falsely creating the appearance that a real CFC, and not the RTFC, that operated profitably." Am. Compl., Case No. 2005-183, ¶ \*3. |
| • "To be the Plaintiffs raised the systematic distortion of RTFC by CFC and those, CFC can stop RTFC to siphon its fiduciary duty and used RTFC earnings at the primary proper to question abuses regarding membership fees as the allocation of percentage income... In early 2003 the percentage allocation issue was raised and by Month of 2003 CFC raised RTFC shortly to a fiduciary shortfall an actually for mediation proceeding... In late May of 2004, Plaintiff Jeff Prasvani elevated a Committee action against RTFC and which a week, on June 1, 2004, RTFC instigated a fc advisory proceeding..." (¶¶ 40-41) | • "Consequently, in response to ICC's and Mr. Prasvani's concerns about the RTFC and its management mismanagement its assets for CFC's benefit, and in response to ICC's efforts to pressure the RTFC to come to terms on these matters, the RTFC and certain officers decided to retaliate enough to quit an. Ring a complaint on March 13, 2003 alleging that ICC and Vitoko had defaulted on their loan obligation. RTFC continued its retaliatory behavior using rich ICC and its Chairman for raising these issues... That scheme culminated the malicious prosecution of bankruptcy proceedings in 2004... Am. Compl., Case No 2005-183, ¶¶ 11, 14 |

| | |
|---|---|
| • "Without the knowledge or consent of ICC, [RTFC's assistant general counsel Frank] Vaughan removed the signature pages from both originals of the Authentic 2001 Loan Agreement and attached them to a different version of the agreement, the False 2001 Loan Agreement." (¶ 119) | • "Further, the RTFC has (1) admitted to substituting pages in the Loan Agreement by and between ICC and the RTFC, (2) admitted to destroying the originals after doing so, and (3) acknowledged that it cannot produce a Loan Agreement executed by all parties." Am. Compl. Case No. 2005-018 ¶ 10. |
| • "CFC knew that the ten defaults were contrived for purposes of retaliation for discovery of the systematic defalcation of RTFC.... The remaining 10 defaults listed upon the False 2001 Loan Agreement are void as a matter of law because of the terms and conditions of a Apr. 19, 1989 Agreement with the Virgin Islands Public Services Commission (the "VI Commission") to which RTFC was a party (hereinafter the "1989 Tri-Party Agreement"). ICC's ten defaults are void because they include the 1989 agreement between RTFC, ICC, and the VI Public Service Comm'n." (¶ 168) | • "In order to thwart the Greenlight Settlement negotiations, the RTFC filed a foreclosure action in Virginia alleging a default in the loan agreements it used on the Vitelco preferred stock offering, even though the RTFC knew that it could not call a default based upon Vitelco's independent financing efforts because of the 1989 PSC Settlement Agreement." Prosser Countercl., Case No. 2004-132, ¶ 31.<br><br>• "ICC made it clear that the three alleged defaults were all barred by the same 1989 Settlement Agreement entered into between the RTFC, ICC and the Virgin Islands Public Service Commission ("PSC") that had been discussed in detail between the parties in relation to the RUS refinancing just months earlier." Am. Compl., Case No. 2005-168, ¶ 23. |
| • "The Intercreditor Agreement was a joint venture between RTFC and Greenlight which pursues CFC's ulteriorly objectives through RTFC; e.g., separate ICC from the Prosser, discharge Jeff Prosser and management loyal to Jeff Prosser, and strip the Prossers of all assets and the ability to ever recover." (¶ 193) | • "Because the CFC and the RTFC have been unable to lawfully obtain control of ICC and Vitelco through the RTFC's foreclosure action against ICC, they decided to frustrate efforts by ICC's parent companies to defend the Greenlight lawsuit by refusing to provide a corrective affidavit of critical false testimony given by one of CFC's employees, Robin Reed. In that case. The CFC then had the RTFC negotiate with Greenlight and enter into an agreement with Greenlight (the "Takeover Agreement"), the purpose of which is to gain control of ICC and Vitelco outside of the litigation pending in this Court.... As neither party had the ability to seize control of ICC and Vitelco by themselves, the RTFC and Greenlight critically needed the Takeover Agreement to act in concert with one another in a joint venture to seize control of ICC and Vitelco." Am. Compl., Case No. 2005-018, ¶¶ 12, 14. |

| | |
|---|---|
| • "The June 2004 foreclosure, its retaliatory acts, coupled with a pattern of retaliatory and extortionary acts eventually resulted in the taking of ICC from the Prossers and the wrongful disparage of Jeff Prosser and others loyal to Jeff Prosser. The foreclosure was without justification (neither the Authentic nor False 2001 Loan Agreement support the Loan count) and was initiated by CFC through RTFC to conceal CFC's extortionary practices, the systematic defalcation of RTFC by CFC is money laundering scheme, which reaches/and regularly required the commission of evil and are fraud." (¶¶ 143, 230(a)) | • "ICC discovered CFC's use of RTFC's profits and threatened to bring a 'derivative suit' against RTFC. In retaliation, RTFC foreclosed on an ICC loan." Prosser et al., 2009 WL 102213, at *2 (D.D.C. Jan. 14, 2009).<br><br>• "Said proceedings were maliciously commenced without probable cause and were made for a purpose other than that of securing the proper adjudication of the claim, as said actions were pursued as an attempt to cover and remove ICC's current management, including Prosser, from running the company. Said proceedings were in retaliation for plaintiffs whistle blowing efforts and its exposing the fact that the RTFC is being used by CFC to substitute its operations to the detriment of the RTFC members." Am. Compl., Case No. 2005-168, ¶¶ 43, 50, 57, 61, 71, 76, 85, 92, 99, 106, 113, 120, 127, 134, 141, 148.<br><br>• "RTFC knows that its misstatements and misrepresentations have gone far beyond the mere conveyance of information regarding issues connected with RTFC's dispute with ICC, and instead constitute a smear campaign designed to undermine Vitelco's relationship with the PSC in order to enable RTFC to take control of ICC's collateral, including Vitelco.... RTFC representatives have acknowledged in internal correspondence that they are motivated, at least in part, by their personal animosity towards ICC's management.... Further, on information and belief, RTFC has engaged in its Bad Faith Scheme in order to cover up its own impropriaties." Prosser Countercl., Case No. 2004-132, ¶¶ 41, 43-44. |
| • "Violations of 18 U.S.C. § 1512(c), a Predicate Act, related to the use of the False 2001 Loan Agreement are as follows.... The destruction of the Authentic 2001 Loan Agreement...." (¶ 230(b)) | • "CFC altered the Authentic 2001 Loan Agreement and destroy the authentic [sic] 2001 Loan Agreement. This statement is supported by the deposition of Frank Vaughan, associate General Counsel of CFC serving as RTFC's internal counsel...." Mem. Opp'n to USCA's Mot. Dismiss, Case No. 2006-024, at 6.<br><br>• "Further, the RTFC has (1) admitted to substituting pages in the Loan Agreement by and between ICC and the RTFC, (2) admitted to destroying the originals after doing so, and (3) acknowledged that it cannot produce a Loan Agreement executed by all parties." Am. Compl., Case No. 2005-018, ¶ 10. |
| • "CFC, acting through RTFC, engaged in numerous Retaliatory and Extortionary Acts before the advent of the Intercreditor Agreement. In a September 2004 meeting held in Chicago 2001, acting through RTFC, and represented by Defendants Litra and LHIS, as well as their outside counsel, acknowledged to Plaintiff Raynor of RTFC's extortion plan to cut off all direct and indirect sources of financing to ICC to cause the capitulation of Jeff Prosser forcing him into a pre-packaged bankruptcy." (¶ 230(c)) | • "As a result of these serious allegations against the RTFC, the RTFC and its officers and directors, including Sheldon Peterson, Steven Lily and John J. List, decided that the RTFC needed to discredit ICC and Mr. Prosser and eliminate him and his respective companies ICC and Vitelco, as members of the RTFC, to avoid the information being circulated by ICC and Prosser to other RTFC members as well as to CFC's rating agencies.... ICC will prove that the RTFC maliciously filed these 10 claimed defaults, knowing full well that they were executed, and organized and displayed a concerted campaign of issuing false statements to the PSC and to industry media and local newspapers to ruin ICC and to wrest control of ICC from Mr. Prosser." Am. Compl., Case No. 2005-168, ¶¶ 10, 17. |

## APPENDIX A

### Prosser Parties' Release of RTFC
### RELEASE IN FULL
### (OF RTFC, CFC, LILLY AND LIST)

### SECTION 1

#### *Definitions*

1.1. **"Release"** means this release in full executed by the Releasing Parties (defined below).

1.2. **"CFC"** means National Rural Utilities Cooperative Finance Corporation, a District of Columbia cooperative association, and includes all of its subsidiary and affiliated corporations, companies, divisions, units, and each of their respective officers, directors, employees, shareholders, partners, agents, representatives, counsel, attorneys, assigns, administrators, successors, predecessors, d/b/a's and assumed names, and insurers—whether specifically mentioned hereafter or not.

1.3. **"RTFC"** means Rural Telephone Finance Cooperative, a District' of Columbia cooperative association, and includes all of its subsidiary and affiliated corporations, companies, divisions, units, and each of their respective officers, directors, em-

ployees, shareholders, partners, agents, representatives, counsel, assigns, attorneys, administrators, successors, predecessors, d/b/a's and assumed names, and insurers—whether specifically mentioned hereafter or not.

1.4. **"List"** means John J. List individually, including, without limitation, any and all heirs, trustees, agents, successors, assigns, executors, administrators; and in his representative and/or official capacity, including, without limitation, as officer, employee, agent, attorney and/or representative of CFC and/or RTFC and/or any of their subsidiary and affiliated corporations, companies, divisions or units.

1.5. **"Lilly"** means Steven Lilly individually, including, without limitation, any and all heirs, trustees, agents, successors, assigns, executors, administrators; and in his representative and/or official capacity, including, without limitation, as officer, employee, agent and/or representative of CFC and/or RTFC and/or any of their subsidiary and affiliated corporations, companies, divisions or units.

1.6. **"Greenlight Entities"** means and includes Greenlight Capital L.P., Greenlight Capital Qualified, L.P. and Greenlight Capital Offshore, Ltd. together with each of their respective subsidiary and affiliated corporations, companies, divisions, units, and their respective officers, directors, employees, shareholders, partners, agents, representatives, counsel, attorneys, assigns, administrators, successors, predecessors, d/b/a's and assumed names, and insurers—whether specifically mentioned hereafter or not.

1.7. **"Vitelco"** means the Virgin Islands Telephone Corporation, a United States Virgin Islands corporation, and includes its subsidiary and affiliated corporations, companies, divisions, units, and each

of their respective officers, directors, employees, shareholders, partners, agents, representatives, counsel, attorneys, assigns, administrators, successors, predecessors, d/b/a's and assumed names, and insurers—whether specifically mentioned hereafter or not.

1.8. **"ICC"** means Innovative Communication Corporation, a United States Virgin Islands corporation, and includes its subsidiary and affiliated corporations, companies, divisions, units, and each of their respective officers, directors, employees, shareholders, partners, agents, representatives, counsel, attorneys, assigns, administrators, successors, predecessors, d/b/a's and assumed names, and insurers—whether specifically mentioned hereafter or not.

1.9. **"ICC–LLC"** means Innovative Communication Company, LLC, a Delaware limited liability company, and includes its subsidiary and affiliated corporations, companies, divisions, units, and each of their respective officers, directors, employees, shareholders, members, partners, agents, representatives, counsel, attorneys, administrators, successors, predecessors, d/b/a's and assumed names, and insurers, whether specifically mentioned hereafter or not, and also includes Innovative Communication Subsidiary Company, LLC, a U.S. Virgin Islands limited liability company, acting by and through its sole managing member ICC–LLC.

1.10. **"ECI"** means Emerging Communications, Inc., a Delaware corporation, and includes its subsidiary and affiliated corporations, companies, divisions, and each of their respective officers, directors, employees, shareholders, partners, agents, representatives, counsel, attorneys, administrators, successors, predecessors, d/b/a's and assumed names, and insurers whether specifically mentioned hereafter or not.

1.11. **"Guarantors, Pledgors, and Mortgagors"** means and includes Prosser

as personal guarantor of certain indebtedness of ICC and Innovative Communication Corporation ("Old ICC"), a dissolved Virgin Islands corporation, to RTFC and other guarantors, pledgors and mortgagors with respect to those loans, including, Innovative Communication Subsidiary Company, LLC, The Daily News Publishing Company, Inc., Caribbean Communications Company d/b/a St. Thomas–St. John Cable TV, BVI Cable TV, Ltd., Caribbean Teleview Services, NV a/k/a St. Maarten Cable TV, Ltd., St. Croix Cable TV, Inc. Atlantic Aircraft, Inc., IC Air, Inc., Vitelcom Cellular, Inc., East Caribbean Cellular, NV, St. Martin Mobiles, SA, Martinique Cable Multimedia, SARL, Group B–200, Inc., World Satellite Guadeloupe, S.A., Innovative Long Distance, Inc., ICC TV, Inc., Val Vision, SA, Cable Evasion 86, S.A., East Caribbean Communications, N.V. (Curacao), East Caribbean Communications, N.V. (Bonaire), East Caribbean Communications, N.V. (St. Maarten), ICC–LLC and Emerging Communications, Inc.

1.12. **"Prosser"** means Jeffrey J. Prosser individually, including without limitation, any and all heirs, trustees, agents, successors, assigns, executors, and administrators, and in his representative capacity as agent, employee, and/or shareholder of ICC, Vitelco, ICC–LLC, and/or ECI, including, but not limited to, his capacity as the indirect beneficial owner, Chief Executive Officer, President, and Chairman of the Board of ICC, member the Board of Vitelco, member and sole managing member of ICC–LLC, and as guarantor of ICC owing to RTFC.

1.13. **"Prosser Subsidiaries"** means each of the entities listed on Schedule I attached hereto, whether or not specifically included in any other definition herein.

1.14. **"Releasing Directors"** means each of John P. Raynor, Richard N. Goodwin, Michael Prosser, Sir Shridath Ramphal, Lt. General Samuel Ebbesen, Sir Ronald M. Sanders, David Sharp and James J. Heying, individually, including without limitation, any and all of their heirs, trustees, agents, successors, assigns, executors, and administrators, and in their representative capacity as agent, employee, and/or shareholder of ICC, Vitelco, ICC–LLC, and/or ECI, including, but not limited to, their capacities as member of the Boards of ICC, Vitelco, and ECI.

1.15. **"Releasing Parties"** includes those entities and individuals included within the definition of ICC, Vitelco, ICC–LLC, ECI, the Prosser Subsidiaries, the Guarantors, Pledgors, and Mortgagors, and also includes Prosser and the Releasing Directors.

1.16. **"Released Parties"** include those entities and individuals included within the definition of RTFC and CFC, and also includes List and Lilly.

1.17. **"Litigation"** means the following actions pending in the District of the Virgin Islands:

(i.) Cause No. 2005cv115; *Innovative Communication Corporation v. Rural Telephone Finance Cooperative;*

(ii.) Cause No. 2004cv154; *Rural Telephone Finance Cooperative v. Innovative, Communication Corporation;*

(iii.) Cause No. 2004cv155; *Rural Telephone Finance Cooperative v. Jeffrey Prosser;*

(iv.) Cause No. 2004cv132; *Rural Telephone Finance Cooperative, for itself and on behalf of Innovative Communication Corporation and the Virgin Islands Telephone Corporation d/b/a Innovative Telephone v. Jeffrey J. Prosser, Lt. General Samuel E. Ebbesen, Richard N. Goodwin, Michael Prosser,*

*Sir Shridath Ramphal, John P. Raynor, Sir Ronald M. Sanders, David Sharp, Innovative Communication Corporation, and Virgin Islands Telephone Corporation d/b/a Innovative Telephone;*

(v.) Cause No. 2005cv168; *Innovative Communication Corporation v. Rural Telephone Finance Cooperative, John J. List, and Steven Lilly;*

(vi.) Cause No. 2006cv011; *Emerging Communication, Inc. and Innovative Communication Company, LLC v. Rural Telephone Finance Cooperative and National Rural Utilities Cooperative Finance Corporation;*

(vii.) Cause No. 2006cv019; *Rural Telephone Finance Cooperative v. Innovative Communication Corporation;* and

(viii.) Cause No. 2006cv018; *Virgin Islands Telephone Corporation v. Rural Telephone Finance Cooperative, National Rural Utilities Cooperative Finance Corporation, Greenlight Capital Qualified, L.P., Greenlight Capital L.P., and Greenlight Capital Offshore, Ltd.*

1.18. **"All Claims"** shall mean and refer to any and all claims, demands, damages (including, without limitation, all actual damages, consequential damages, statutory damages, punitive and exemplary damages, prejudgment and post-judgment interest, attorneys' fees and costs of court, and all other damages or losses recoverable now or at any later time under applicable law), actions of any character or type (including, but not limited to, class action or derivative lawsuits or proceedings, actions based on violations of local, state and/or federal statutes and regulations, malfeasance, non-feasance, fraud, intentional torts, malicious conduct, including, but not limited to, intentional interference with contracts or prospective business relations, libel, slander, defamation, wrongful use of civil proceedings and abuse of process, breach of contract, bad faith, breach of fiduciary duty, lender liability, contribution, conspiracy, retaliatory conduct, or any combination thereof), and causes of action of whatever nature, in law or equity (including declaratory and injunctive relief), known or unknown, that the Releasing Parties have, or ever have had, or may in the future have, against the Released Parties related to, directly or indirectly, any and all of the facts, events, transactions, occurrences, course of dealings and/or disputes between the Releasing Parties and the Released Parties occurring prior to the date of this Release or occurring after the date of this Release but which involve the same facts, events, transactions, occurrences, course of dealings and/or disputes existing as of the date of this Release whether known or unknown arising out of the relationships or alleged relationships between or among the Releasing Parties and the Released Parties as member, cooperative, borrower, lender, patron, third-party beneficiary, investor, issuer of security or any other relationship, as well as any and all consequences thereof, each and all, even though one or more of those consequences are not specifically identified herein, other than, in any such case, the Excluded Claims (as hereinafter defined).

1.19. **"Excluded Claims"** shall mean and refer to any obligations that the Released Parties may have under, and any rights, causes of action or other claims of any nature that the Releasing Parties may have against the Released Parties to enforce the terms and provisions of, that certain Terms and Conditions of Settlement of Claims of RTFC, CFC, Prosser Parties and Greenlight Entities, dated as

of April 26, 2006, among Rural Telephone Finance Cooperative, National Rural Utilities Cooperative Finance Corporation, Greenlight Capital, L.P., Greenlight Capital Qualified, L.P., Greenlight Offshore, Ltd., Innovative Communication Corporation, Innovative Communication Company, LLC, Emerging Communications, Inc., Virgin Islands Telephone Corporation and Jeffrey J. Prosser (the "Terms and Conditions") and any or all Payment Documentation (as defined in the Terms and Conditions) to which any of the Released Parties are a party.

## SECTION 2

### *Release*

2.1. The Releasing Parties hereby fully and forever RELEASE, ACQUIT and DISCHARGE, the Released Parties of and from any and All Claims and/or Litigation, with prejudice (other than the Excluded Claims).

2.2. The parties understand and acknowledge that the foregoing release:

(i.) IS A GENERAL RELEASE OF ALL CLAIMS (AS DEFINED HEREIN)—PAST, PRESENT, AND FUTURE AND WHETHER KNOWN OR UNKNOWN, OTHER THAN THE EXCLUDED CLAIMS (AS DEFINED HEREIN);

(ii.) is a full and complete release of any and all of the Releasing Parties' Claims and/or Litigation (other than the Excluded Claims), and the Releasing Parties are precluded from seeking further money or other relief based upon such Claims and/or Litigation (other than the Excluded Claims);

(iii.) is to be interpreted liberally to effectuate maximum protection to the Released Parties; and

(iv.) is specifically intended to operate and be applicable even if it is alleged, charged or proven that some or all of the claims or damages released are solely and completely or partially caused by the negligent acts, gross negligence, fraud, misrepresentation, intentional conduct, breach of fiduciary duty, violation of statute or common law, or conduct of any type by the Released Parties.

## SECTION 3

### *Covenant Not To Sue*

3.1 The Releasing Parties covenant, warrant, and represent that they shall not hereafter sue, or bring or continue any action or proceeding against the Released Parties with respect to All Claims (other than the Excluded Claims) released herein.

## SECTION 4

### *Consideration*

4.1 The Releasing Parties enter into this Release for good and valuable consideration, the receipt of and sufficiency of which is hereby acknowledged.

## SECTION 5

### *Representations*

5.1 The Releasing Parties represent and warrant:

(i.) that the execution and delivery of this Release have been duly authorized by all necessary actions;

(ii.) that before executing this Release, they became fully informed of the terms, conditions, and contents, and effect of this Release;

(iii.) that they are legally competent to execute this Release;

(iv.) that no promise or representation of any kind has been made to them by the other, or by anyone acting for the other, except as expressly stated in this Release; and

(v.) they relied solely on their own judgment and the advice of their counsel in executing this Release.

## SECTION 6

### *Full Knowledge and Voluntary Release*

6.1 The Releasing Parties hereby represent and warrant that they have read this Release and they expressly acknowledge:

(i.) that they have entered into this Release of their own free choice based upon their own knowledge and judgment; and

(ii.) that they have not acted in reliance on any representation, advice or other action other than as included in this Agreement.

## SECTION 7

### *Miscellaneous*

7.1 This Release shall be governed by the internal substantive laws of the State of Delaware (without regard to its conflicts of law principles). The Parties irrevocably agree that in the event of any litigation enforcing the terms and conditions herein, or otherwise relating in any way to the matters addressed herein (but excluding matters solely between or among the Greenlight Entities and RTFC or CFC), any such litigation shall be brought exclusively in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), or in the United States District Court for the District of

Delaware (the "District Court"), to the extent that the Bankruptcy Court cannot or will not exercise jurisdiction. In the event that neither the Bankruptcy Court nor the District Court can or will exercise jurisdiction, the Parties irrevocably agree that any litigation enforcing the terms and conditions herein, or otherwise relating in any way to the matters addressed herein (but excluding matters solely between or among the Greenlight Entities and RTFC or CFC) shall be brought exclusively in the applicable state court (the "State Court") for the State of Delaware. Each of the Parties irrevocably consents to the personal jurisdiction and venue in the Bankruptcy Court, the District Court and/or the State Court, as applicable, in connection with any actions to enforce the terms and conditions herein or otherwise relating in any way to the matters addressed herein (but excluding matters solely between or among the Greenlight Entities and RTFC or CFC) and waives any objection to venue laid therein. Process in any action or proceeding referred to in the preceding sentence may be served on any Party anywhere in the world.

## SECTION 8

### *Miscellaneous*

8.1 This Release may be executed in one or more counterparts, each of which shall be deemed to be an original but all of which together shall constitute one and the same instrument. Each Releasing Party covenants, represents and warrants: that such counterparts need not include the signature/verification page for any other Releasing Party; that the Releasing Parties and the Released Parties may combine the signed counterparts into a single document by attaching all of the executed signature/verification pages to a single copy or original of this Release; and that the

82

foregoing shall not affect the validity of this Release.

**EXECUTED** in multiple parts on this _____ day of May, 2006:

INNOVATIVE COMMUNICATION CORPORATION

By: /s/

Jeffrey J. Prosser

Chairman and Chief Executive Officer

INNOVATIVE COMMUNICATION CORPORATION, a United States Virgin Islands corporation that was dissolved in December, 1998

By: /s/

Jeffrey J. Prosser

Chairman and Chief Executive Officer

INNOVATIVE COMMUNICATION SUBSIDIARY COMPANY, LLC

By: /s/

Jeffrey J. Prosser

Chairman and Chief Executive Officer

VIRGIN ISLANDS TELEPHONE CORPORATION d/b/a INNOVATIVE TELEPHONE

By: /s/

David Sharp

Chairman and Chief Executive Officer

INNOVATIVE COMMUNICATION COMPANY, LLC

By: /s/

Its President

EMERGING COMMUNICATIONS INC.

By: /s/

Jeffrey J. Prosser

Chairman and Chief Executive Officer

By: /s/

Jeffrey J. Prosser, individually

BELIZE TELECOM LTD.

By: /s/

Its President

VITELCOM CELLULAR, INC.

By: /s/

Its President

ST. CROIX CABLE TV, INC.

By: /s/

Its President

CARIBBEAN COMMUNICATIONS CORP.

By: /s/

Its President

INNOVATIVE LONG DISTANCE, INC.

By: /s/

Its President

ICC TV, INC.

By: /s/

Its President

DAILY NEWS PUBLISHING CO., INC.

By: /s/

Its President

ICUSC, INC.

By: /s/

Its President

EXECUTIVE SECURITY SERVICES, INC.

By: /s/

Its President

WORLD SATELLITE GUADELOUPE S.A.

By: /s/

Its President

MARTINIQUE TV CABLE S.A.

By: /s/

Its President

MARTINIQUE CABLE MULTIMEDIA, SARL

By: /s/

Its <u>President</u>

B.V.I. CABLE T.V. LTD.

By: /s/

Its <u>President</u>

CARIBBEAN TELEVIEW SERVICES N.V.

By: /s/

Its <u>President</u>

ST. MARTIN MOBILES S.A.

By: /s/

Its <u>President</u>

SMB BOATPHONE HOLDINGS LIMITED

By: /s/

Its <u>President</u>

MOBARTON INVESTMENT N.V.

By: /s/

Its <u>President</u>

EAST CARIBBEAN CELLULAR N.V.

By: /s/

Its <u>President</u>

EAST CARIBBEAN COMMUNICATIONS (ST. MAARTEN) N.V.

By: /s/

Its <u>President</u>

EAST CARIBBEAN COMMUNICATIONS (BONAIRE) N.V.

By: /s/

Its <u>President</u>

EAST CARIBBEAN COMMUNICATIONS (CURACAO) N.V.

By: /s/

Its <u>President</u>

TODD INTERNATIONAL LTD.

By: /s/

Its <u>President</u>

ZUMBRO LIMITED

By: /s/

Its <u>President</u>

PINACLE LIMITED

By: /s/

Its <u>President</u>

COMSYS INTERNATIONAL LTD.

By: /s/

Its <u>President</u>

K.I. MANAGEMENT LTD.

By: /s/

Its <u>President</u>

KC INTERNATIONAL INC.

By: /s/

Its <u>President</u>

TKH INTERNATIONAL LIMITED

By: /s/

Its <u>President</u>

MINION CORPORATION N.V.

By: /s/

Its <u>President</u>

VALVISION TELECOMMUNICATIONS B.V.

By: /s/

Its <u>President</u>

VALVISION SAS (VALVISION)

By: /s/

Its <u>President</u>

AMZAK INTERNATIONAL LIMITED

By: /s/

Its <u>President</u>

H.M. BEUK BELEGGINGEN B.V.

By: /s/

Its <u>President</u>

ALTA B.V.

By: /s/

Its <u>President</u>

ICC FRANCE S.A.

By: /s/

Its <u>President</u>

CABLE EVASION 86 S.A.

By: /s/

Its <u>President</u>

ATLANTIC AIRCRAFT, INC.

By: /s/

Its <u>President</u>

IC AIR, INC.

By: /s/

Its <u>President</u>

GROUP B–200, INC.

By: /s/

Its <u>President</u>

COMMUNICATIONS SYSTEMS & SER-VICES, INC.

By: /s/

Its <u>President</u>

/s/

Richard N. Goodwin, individually and as one of the Releasing Directors

---

Michael Prosser, individually and as one of the Releasing Directors

---

Sir Shridath Ramphal, individually and as one of the Releasing Directors

---

Lt. General Samuel Ebbesen, individually and as one of the Releasing Directors

---

Sir Ronald M. Sanders, individually and as one of the Releasing Directors

---

David Sharp, individually and as one of the Releasing Directors

---

John P. Raynor, individually and as one of the Releasing Directors

---

Richard N. Goodwin, individually and as one of the Releasing Directors

/s/

Michael Prosser, individually and as one of the Releasing Directors

---

Sir Shridath Ramphal, individually and as one of the Releasing Directors

---

Lt. General Samuel Ebbesen, individually and as one of the Releasing Directors

---

Sir Ronald M. Sanders, individually and as one of the Releasing Directors

---

David Sharp, individually and as one of the Releasing Directors

---

John P. Raynor, individually and as one of the Releasing Directors

---

Richard N. Goodwin, individually and as one of the Releasing Directors

---

Michael Prosser, individually and as one of the Releasing Directors

---

Sir Shridath Ramphal, individually and as one of the Releasing Directors

/s/

Lt. General Samuel Ebbesen, individually and as one of the Releasing Directors

_____

Sir Ronald M. Sanders, individually and as one of the Releasing Directors

_____

David Sharp, individually and as one of the Releasing Directors

_____

John P. Raynor, individually and as one of the Releasing Directors

_____

Richard N. Goodwin, individually and as one of the Releasing Directors

_____

Michael Prosser, individually and as one of the Releasing Directors

/s/

Sir Shridath Ramphal, individually and as one of the Releasing Directors

_____

Lt. General Samuel Ebbesen, individually and as one of the Releasing Directors

/s/

Sir Ronald M. Sanders, individually and as one of the Releasing Directors

_____

David Sharp, individually and as one of the Releasing Directors

_____

John P. Raynor, individually and as one of the Releasing Directors

_____

Richard N. Goodwin, individually and as one of the Releasing Directors

_____

Michael Prosser, individually and as one of the Releasing Directors

_____

Sir Shridath Ramphal, individually and as one of the Releasing Directors

_____

Lt. General Samuel Ebbesen, individually and as one of the Releasing Directors

_____

Sir Ronald M. Sanders, individually and as one of the Releasing Directors

/s/

David Sharp, individually and as one of the Releasing Directors

_____

John P. Raynor, individually and as one of the Releasing Directors

_____

Richard N. Goodwin, individually and as one of the Releasing Directors

_____

Michael Prosser, individually and as one of the Releasing Directors

_____

Sir Shridath Ramphal, individually and as one of the Releasing Directors

_____

Lt. General Samuel Ebbesen, individually and as one of the Releasing Directors

_____

Sir Ronald M. Sanders, individually and as one of the Releasing Directors

_____

David Sharp, individually and as one of the Releasing Directors

/s/

John P. Raynor, individually and as one of the Releasing Directors

## SCHEDULE 1

### PROSSER SUBSIDIARIES

Innovative Communication Subsidiary Company, LLC (a U.S. Virgin Islands limited liability company)

Belize Telecom Ltd. (a Belize limited liability company)

Vitelcom Cellular, Inc. (a U.S. Virgin Islands corporation)

St. Croix Cable TV, Inc. (a U.S. Virgin Islands corporation)

Caribbean Communications Corp. (a U.S. Virgin Islands corporation)

Innovative Long Distance, Inc. (a U.S. Virgin Islands corporation)

iCC TV, Inc. (a U.S. Virgin Islands corporation)

Daily News Publishing Co., Inc. (a U.S. Virgin Islands corporation)

ICUSC, Inc. (a U.S. Virgin Islands corporation)

Executive Security Services, Inc. (a U.S. Virgin Islands corporation)

World Satellite Guadeloupe S.A. (a French corporation)

Martinique TV Cable S.A. (a French corporation)

Martinique Cable Multimedia, SARL (a French limited liability company)

B.V.I. Cable T.V. Ltd. (a British Virgin Islands corporation)

Caribbean Teleview Services N.V. (a Netherlands Antilles corporation)

St. Martin Mobiles S.A. (a French corporation)

SMB Boatphone Holdings Limited (a British Virgin Islands corporation)

Mobarton Investment N.V. (a Netherlands Antilles corporation)

East Caribbean Cellular N.V. (a Netherlands Antilles corporation)

East Caribbean Communications (St. Maarten) N.V. (a Netherlands Antilles corporation)

East Caribbean Communications (Bonaire) N.V. (a Netherlands Antilles corporation)

East Caribbean Communications (Curacao) N.V. (a Netherlands Antilles corporation)

Todd International Ltd., (a British Virgin Islands international business corporation)

Zumbro Limited (a British Virgin Islands international business corporation)

Pinacle Limited (a British Virgin Islands international business corporation)

COMSYS International Ltd. (a British Virgin Islands international business corporation)

K.I. Management Ltd. (a British Virgin Islands international business corporation)

KC International Inc. (a British Virgin Islands international business corporation)

TKH International Limited (a British Virgin Islands international business corporation)

Minion Corporation N.V. (a Netherlands Antilles corporation)

Valvision Telecommunications B.V. (a Dutch corporation)

Valvision SAS (Valvision) (a French corporation)

Amzak International Limited (a Bahamian company)

H.M. Beuk Beleggingen B.V. (a Dutch corporation)

Alta B.V. (a Dutch corporation)

ICC France S.A. (a French corporation)

Cable Evasion 86 S.A. (a French corporation)

Atlantic Aircraft, Inc. (a U.S. Virgin Islands corporation)

IC Air, Inc. (a Delaware corporation)

Group B–200, Inc. (a Puerto Rico corporation)

Communications Systems & Services, Inc. (a Florida corporation)

## APPENDIX B

### Prosser Parties' Release of Greenlight

*GENERAL RELEASE AGREEMENT*

THIS GENERAL RELEASE AGREE-MENT (this "Agreement" or this "Release") is dated as of June 6, 2006 by INNOVATIVE COMMUNICATION CORPORATION, a United States Virgin Islands corporation ("Innovative New"), INNOVATIVE COMMUNICATION CORPORATION, a United States Virgin Islands corporation that was dissolved in December, 1998 ("Innovative Old"), VIRGIN ISLANDS TELEPHONE CORPORATION, a United States Virgin Islands corporation ("Vitelco"), INNOVATIVE COMMUNICATION COMPANY, LLC, a Delaware limited liability company, ("ICC–LLC"), EMERGING COMMUNICATIONS, INC., a Delaware corporation, ("ECI"), JEFFREY J. PROSSER ("Mr. Prosser"), and each of the entities listed on Schedule I attached hereto (the "Prosser Subsidiaries" and together with Prosser, Innovative New, Innovative Old, Vitelco, ICC–LLC, and ECI, collectively, the "Releasors") to and in favor of GREENLIGHT CAPITAL, L.P., a limited partnership organized under the laws of Delaware ("Greenlight L.P."), GREENLIGHT CAPITAL QUALIFIED, L.P., a limited partnership organized under the laws of Delaware ("Greenlight Qualified"), GREENLIGHT CAPITAL OFFSHORE, LTD., a corporation organized under the laws of British Virgin Islands ("Greenlight Offshore"), GREENLIGHT CAPITAL,

INC., a corporation organized under the laws of Delaware ("Greenlight Corp."), GREENLIGHT CAPITAL, LLC, a Delaware limited liability company ("Greenlight LLC" and with Greenlight L.P., Greenlight Qualified, Greenlight Offshore and Greenlight Corp., collectively, with each of their respective subsidiaries and Affiliates (as defined herein), the "Greenlight Parties"), DAVID EINHORN ("Mr. Einhorn"), and VINIT SETHI ("Mr. Sethi"), and the directors, officers, shareholders, partners, members, managers, employees, agents and representatives of each of the Greenlight Parties and their respective subsidiaries and Affiliates (as defined herein), including, but not limited to, each of the attorneys and/or law firms listed on Schedule II attached hereto (collectively, with the Greenlight Parties, their respective subsidiaries and Affiliates, Mr. Einhorn and Mr. Sethi, the "Released Parties"). The Released Parties and the Releasors are referred to herein, collectively, as the "Parties".

### BACKGROUND

A. Mr. Prosser and Dawn Prosser, individually and/or collectively, directly and/or indirectly own or control 100% of the outstanding equity interests of ICC–LLC. ICC–LLC owns or controls, directly and/or indirectly, through one or more subsidiary entities, 100% of the outstanding stock or other equity interests of various entities, including, but not limited to, ECI, Innovative New, Vitelco, and each of the Prosser Subsidiaries.

B. As a result of various disputes among the Parties, certain judgments against one or more of Prosser, ICC–LLC and/or ECI have been previously entered in the Court of Chancery of the State of Delaware in favor of and/or are held by one or more the Greenlight Parties (the "Greenlight Judgments"), and certain

claims have been asserted and/or litigation instituted by or among one or more of the Greenlight Parties and one or more of the Releasors, including, but not limited to, (i) the following litigation or proceedings in the United States Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy Court"): (x) *In re Jeffrey Prosser*, Case Number 06–10135(JKF) pending in the United States Bankruptcy Court for the District of Delaware, (y) *In re Innovative Communication Company, LLC*, Case Number 06–10133(JKF) pending in the United States Bankruptcy Court for the District of Delaware and (z) *In re Emerging Communications, Inc.*, Case Number 06–10134(JKF) pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Proceedings") and (ii) the following litigation outside of the Delaware Bankruptcy Court (collectively, the "Non–Bankruptcy Proceedings"): (A) *Greenlight Capital Qualified. L.P., Greenlight Capital L.P. and Greenlight Capital Offshore, Ltd. v. Emerging Communications, Inc.*, Court of Chancery of the State of Delaware in and for New Castle County, Civil Action No. 16943, Consolidated Civil Action No. 16415, pending in the Supreme Court of the State of Delaware on appeal as *Emerging Communications, Inc. v. Greenlight Capital Qualified. L.P., Greenlight Capital L.P. and Greenlight Capital Offshore, Ltd.*, No. 20, 2006, (B) *Greenlight Capital Qualified, L.P., Greenlight Capital L.P. and Greenlight Capital Offshore, Ltd. v. Innovative Communication Corporation, Innovative Communication Company, LLC, and Jeffrey J. Prosser*, Court of Chancery of the State of Delaware in and for New Castle County, Civil Action No. 18816, Consolidated Civil Action No. 16415, pending in the Supreme Court of the State of Delaware on appeal as *Innovative Communication Corporation, Inno-vative Communication Company, LLC, and Jeffrey J. Prosser v. Greenlight Capital Qualified, L.P., Greenlight Capital L.P. and Greenlight Capital Offshore, Ltd.*, No. 21, 2006, and (C) each of the actions listed on Schedule III attached hereto.

C. Rural Telephone Finance Cooperative, a cooperative association organized under the laws of the District of Columbia ("RTFC"), National Rural Utilities Cooperative Finance Corporation, a cooperative association organized under the laws of the District of Columbia ("CFC"), the Greenlight Parties, Innovative New, ECI, ICC–LLC, Vitelco and Mr. Prosser have entered into a certain Terms and Conditions of Settlement of Claims of RTFC, CFC, Prosser Parties and the Greenlight Entities, dated as of April 26, 2006 (the "Terms and Conditions"), pursuant to which the Parties agreed to enter into this Release.

D. Pursuant to the Terms and Conditions, it is a condition to the Released Parties' obligation to deposit certain documentation into escrow that the Releasors execute and deliver this Release.

E. The Parties now wish to enter into this Release as provided in the Terms and Conditions.

**NOW, THEREFORE,** in consideration of the foregoing premises, the mutual covenants and agreements of the Parties contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Releasors hereby agree as follows:

1. *General Definitions.* For purposes of this Agreement, "Affiliate" of a person or entity means any other person or entity (a) that directly or indirectly through one or more intermediaries controls, is controlled by or is under common control with, the person or entity, (b) that directly or indirectly beneficially owns or holds 10% or more of any class of equity securi-

ty, partnership interests or other similar interests of the entity or (c) 10% or more of the equity securities, partnership interests or other similar interests of which is directly or indirectly beneficially owned or held by the person or entity. The term "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a person or entity, whether through the ownership of voting securities, by contract or otherwise. With respect to a natural person, such natural person's Affiliates shall also include such natural person's spouse, and their siblings, parents and lineal descendants. Other capitalized terms not otherwise defined in this Agreement shall have the definitions ascribed to them in the Terms and Conditions.

2. *Release by the Releasing Parties.* Effective as of the date of this Agreement, each of the Releasors, on behalf of the Releasor and the Releasor's respective past, present and future parents, subsidiaries and Affiliates and the respective trustees, beneficiaries, directors, officers, shareholders, partners, members, managers, employees, attorneys, legal counsel, accountants, agents, representatives, administrators, insurers, transferees, heirs, executors, predecessors, successors and assigns of such Releasors and/or such Releasors' past, present and future parents, subsidiaries and Affiliates (collectively, with the Releasors, the "Releasing Parties") hereby releases, acquits and forever discharges, with prejudice, each of the Released Parties from past, present or future claims, costs, expenses, accounts, offsets, demands, causes of action, suits, debts, controversies, agreements, damages (including, without limitation, all actual damages, consequential damages, statutory damages, punitive and exemplary damages, prejudgment and post-judgment in-

terest, attorney's fees and costs of court, and all other damages or losses recoverable now or at any later time under applicable law), judgments, obligations, defenses, promises, covenants, reckoning, contracts, endorsements, bonds, specialties, trespasses, variances, extents, executions and liabilities of any kind or nature whatsoever, in law, equity, or otherwise, whether known or unknown to any Party at this time, asserted or unasserted, liquidated or unliquidated, absolute or contingent, which any of the Releasing Parties had, may have, now has or which may hereafter accrue or otherwise be acquired against any of the Released Parties on account of, arising out of, or relating to, or alleged or asserted or which could have been alleged or asserted or involving any matter occurring at any time from the beginning of the world up to and including the date of this Agreement (the "Claims"), of any kind or nature whatsoever, in law or equity (including, but not limited to, class action or derivative lawsuits or proceedings, actions based on violations of local, state and/or federal law and regulations, malfeasance, nonfeasance, fraud, intentional torts, malicious conduct, including, but not limited to, intentional interference with contracts or prospective business relations, libel, slander, defamation, wrongful use of civil proceedings and abuse of process, breach of contract, bad faith, breach of fiduciary duty, contribution, conspiracy, retaliatory conduct, or any combination thereof), including, *but not limited to,* any Claims (i) related in any way to ICC–LLC, ECI, Innovative Old, Innovative New, Vitelco, or any of the Prosser Subsidiaries or any of their respective businesses or operations, the Greenlight Judgments, the Bankruptcy Proceedings or the Non–Bankruptcy Proceedings (all of which Non–Bankruptcy Proceedings are being contemporaneously released and/or terminated by the parties thereto); (ii) related

in any way to the subject matter of the Greenlight Judgments, the Bankruptcy Proceedings or the Non–Bankruptcy Proceedings; (iii) which were asserted or could have been asserted in the Non–Bankruptcy Proceedings or the Bankruptcy Proceedings, and/or (iv) which relate in any way or arise out of any one or more of their individual capacities and/or their capacity as an agent, attorney, legal counsel, accountant, employee, shareholder, member, director, officer, manager, representative of or consultant to any other of the Released Parties; *provided, however,* that this Agreement and the foregoing release is without effect on the obligations of Greenlight L.P., Greenlight Qualified, and Greenlight Offshore (i) to deposit a release of the Releasing Parties into escrow as provided in the Terms and Conditions or (ii) under any of the Payment Documentation as defined in and delivered pursuant to the Terms and Conditions. This Release shall (i) operate as a full and final settlement of the Released Parties' past, present, and future liabilities to any of the Releasing Parties and (ii) be (a) effective immediately, (b) unconditional, and (c) irrevocable, regardless of whether, among other things, the Releasing Parties make the Payment and the Payment Documentation is released from escrow.

3. ***Releasors' Representations and Warranties.*** Each of the Releasors on behalf of itself and each of its respective Related Parties, represents and warrants to the Released Parties (i) that the execution and delivery of this Release have been duly authorized by all necessary actions; (ii) that before executing this Release, they became fully informed of the terms, conditions, and contents, and effect of this Release; (iii) that they are legally competent to execute this Release; (iv) that no promise or representation of any kind has been made to them by any of the Released Parties, or by anyone acting for any of the Released Parties, except as expressly stated in this Release; (v) that they have not transferred to any person or entity any of their Claims or any interest thereunder; (vi) that this release constitutes the legal, valid and binding obligation of each Releasing Party enforceable against it in accordance with its terms; (vii) that they relied solely on their own judgment and the advice of their counsel in executing this Release; (viii) that they have entered into this Release of their own free choice based upon their own knowledge and judgment; and (ix) that they have not acted in reliance on any representation, advice or other action other than as included in this Release.

4. ***Entire Agreement; Parties; Predecessors, Successors and Assigns; Survival of Representations.***

(a) This Agreement, together with the Terms and Conditions, constitutes the entire agreement between the Parties with respect to the subject matter hereof, supersedes any prior agreements and understandings between the Parties, whether written or oral, with respect to the subject matter hereof and shall bind the Releasors, and each of their respective Related Parties and benefit the Released Parties and their respective Related Parties, predecessors, successors and assigns.

(b) Notwithstanding and without limiting the foregoing, it is the intention that wherever in this instrument any Party shall be designated or referred to by name or general references (except where defining and/or identifying the parties to a specified agreement other than this Agreement) such designation is intended to and shall have the same effect as if the words "and each of their respective past, present and future parents, subsidiaries and affiliates and their respective trustees, benefi-

ciaries, directors, officers, shareholders, partners, members, managers, employees, attorneys, legal counsel, accountants, agents, representatives, administrators, insurers, transferees, heirs, executors, predecessors, successors and assigns" have been inserted after each and every such designation and all the terms, covenants and conditions herein contained shall be for and shall inure to the benefit of and shall bind the respective Parties hereto, and each of their respective past, present and future parents, subsidiaries and affiliates and their respective trustees, beneficiaries, directors, officers, shareholders, partners, members, managers, employees, attorneys, legal counsel, agents, representatives, administrators, insurers, transferees, heirs, executors, predecessors, successors and assigns.

(c) All representations made herein by the Releasors shall survive the execution and delivery hereof.

### 5. *Governing Law; Jurisdiction.*

(a) This Agreement shall be governed by and construed in accordance with the internal laws of the State of Delaware without giving effect to the principles of conflicts of law.

(b) The Parties irrevocably agree that in the event of any litigation enforcing the terms and conditions hereof, or otherwise relating in any way to the matters addressed herein (but excluding matters solely between or among the Releasors) any such litigation shall be brought exclusively in the Delaware Bankruptcy Court, or in the United States District Court for the District of Delaware (the "District Court"), to the extent that the Delaware Bankruptcy Court cannot or will not exercise jurisdiction. In the event that neither the Delaware Bankruptcy Court nor the District Court can or will exercise jurisdic-

tion, the Parties irrevocably agree that any litigation enforcing the terms and conditions hereof or otherwise relating in any way to the matters addressed herein (but excluding matters solely between or among the Releasors) shall be brought exclusively in the applicable state court (the "State Court") for the State of Delaware. Each of the Parties irrevocably consents to personal jurisdiction and venue in the Delaware Bankruptcy Court, the District Court and/or the State Court, as applicable, in connection with any actions to enforce the terms and conditions hereof or otherwise relating in any way to the matters addressed herein (but excluding matters solely between or among the Releasors) and waives any objection to venue laid therein. Process in any action or proceeding referred to in the preceding sentence may be served on any Party anywhere in the world.

### 6. *Headings.* The headings of the several sections of this Agreement are inserted for convenience only and shall not in any way affect the meaning or construction of any provision of this Agreement

### 7. *Construction.* Should any provision of this Agreement require interpretation or construction, it is agreed that because all Parties, by their respective attorneys, have fully participated in the preparation of all provisions of this Agreement, any arbitrator or judge who interprets or construes this Agreement shall not apply any presumption based upon the rule of construction that a document is to be construed more strictly against the party who itself or through its agents prepared such document.

### 8. *Counterparts.* This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which taken together shall constitute but one and the instrument Each Releasor covenants, represents and war-

rants that such counterparts need not include the signature/verification page for any other Releasor, that the Releasors and the Released Parties may combine the signed counterparts into a single document by attaching all of the executed signature/verification pages to a single copy or original of this Release; and that the foregoing shall not affect the validity of this Release.

9. *Acknowledgement of the Parties.* The parties understand and acknowledge that the foregoing release:

(i.) IS A GENERAL RELEASE OF ALL CLAIMS (AS DEFINED HEREIN)—PAST, PRESENT, AND FUTURE AND WHETHER KNOWN OR UNKNOWN;

(ii.) is a full and complete release of any and all of the Releasing Parties' Claims and/or Litigation, and the Releasing Parties are precluded from seeking further money or other relief based upon such Claims and/or Litigation;

(iii.) is to be interpreted liberally to effectuate maximum protection to the Released Parties; and

(iv.) is specifically intended to operate and be applicable even if it is alleged, charged or proven that some or all of the claims or damages released are solely and completely or partially caused by the negligent acts, gross negligence, fraud, misrepresentation, intentional conduct, breach of fiduciary duty, violation of statute or common law, or conduct of any type by the Released Parties.

10. *Covenant Not To Sue.* The Releasors covenant, warrant, and represent that they shall not hereafter sue, or bring or continue any action or proceeding against the Released Parties with respect to all Claims released herein.

11. *Consideration.* The Releasors enter into this Release for good and valuable consideration, the receipt of and sufficiency of which is hereby acknowledged.

12. *Further Assurances.* The Releasors shall take, or cause to be taken, upon request by the Released Parties, all reasonably appropriate action, and do, or cause to be done, all things reasonably necessary, proper or advisable to consummate and make effective the releases contemplated hereunder, including, without limitation, executing and delivering all documents deemed reasonably necessary by the Released Parties to effectuate the releases contemplated hereby.

**IN WITNESS WHEREOF,** the undersigned have duly executed this General Release Agreement as of the date first above written.

INNOVATIVE COMMUNICATION CORPORATION

By: /s/

Jeffrey J. Prosser

Chairman and Chief Executive Officer

INNOVATIVE COMMUNICATION CORPORATION, a United States Virgin Islands corporation that was dissolved in December, 1998

By: /s/

Jeffrey J. Prosser

Chairman and Chief Executive Officer

VIRGIN ISLANDS TELEPHONE CORPORATION d/b/a INNOVATIVE TELEPHONE

By: —————————

David Sharp

Chairman and Chief Executive Officer

INNOVATIVE COMMUNICATION COMPANY, LLC

By: /s/

Jeffrey J. Prosser

Sole Managing Member

EMERGING COMMUNICATIONS INC.

By: /s/

Jeffrey J. Prosser

Chairman and Chief Executive Officer

INNOVATIVE COMMUNICATION CORPORATION, a United States Virgin Islands corporation that was dissolved in December, 1998

By: _____

Jeffrey J. Prosser

Chairman and Chief Executive Officer

VIRGIN ISLANDS TELEPHONE COR-PORATION d/b/a INNOVATIVE TELE-PHONE

By: /s/

Samuel E. Ebbesen

Director and Secretary

INNOVATIVE COMMUNICATION COMPANY, LLC

By: _____

Jeffrey J. Prosser

Sole Managing Member

EMERGING COMMUNICATIONS INC.

By: _____

Jeffrey J. Prosser

Chairman and Chief Executive Officer

INNOVATIVE COMMUNICATION SUBSIDIARY COMPANY, LLC

By: /s/

Jeffrey J. Prosser

Its President

BELIZE TELECOM LTD

By: /s/

Jeffrey J. Prosser

Its President

VITELCOM CELLULAR, INC.

By: /s/

Jeffrey J. Prosser

Its President

ST. CROIX CABLE TV, INC.

By: /s/

Jeffrey J. Prosser

Its President

CARIBBEAN COMMUNICATIONS CORP.

By: /s/

Jeffrey J. Prosser

Its President

INNOVATIVE LONG DISTANCE, INC.

By: /s/

Jeffrey J. Prosser

Its President

ICC TV, INC.

By: /s/

Jeffrey J. Prosser

Its President

DAILY NEWS PUBLISHING CO., INC.

By: /s/

Jeffrey J. Prosser

Its President

ICUSC, INC.

By: /s/

Jeffrey J. Prosser

Its President

EXECUTIVE SECURITY SERVICES, INC.

By: /s/

Jeffrey J. Prosser

Its President

WORLD SATELLITE GUADELOUPE S.A.

By: /s/

Jeffrey J. Prosser

Its President

MARTINIQUE TV CABLE S.A.

By: /s/

Jeffrey J. Prosser

Its President

MARTINIQUE CABLE MULTIMEDIA, SARL

By: /s/

Jeffrey J. Prosser

Its President

B.V.I. CABLE T.V. LTD.

By: /s/

Jeffrey J. Prosser

Its President

CARIBBEAN TELEVIEW SERVICES N.V.

By: /s/

Jeffrey J. Prosser

Its President

ST. MARTIN MOBILES S.A.

By: /s/

Jeffrey J. Prosser

Its President

SMB BOATPHONE HOLDINGS LIMITED

By: /s/

Jeffrey J. Prosser

Its President

MOBARTON INVESTMENT N.V.

By: /s/

Jeffrey J. Prosser

Its President

EAST CARIBBEAN CELLULAR N.V.

By: /s/

Jeffrey J. Prosser

Its President

EAST CARIBBEAN COMMUNICATIONS (ST. MAARTEN) N.V.

By: /s/

Jeffrey J. Prosser

Its President

EAST CARIBBEAN COMMUNICATIONS (BONAIRE) N.V.

By: /s/

Jeffrey J. Prosser

Its President

EAST CARIBBEAN COMMUNICATIONS (CURACAO) N.V.

By: /s/

Jeffrey J. Prosser

Its President

TODD INTERNATIONAL LTD.

By: /s/

Jeffrey J. Prosser

Its President

ZUMBRO LIMITED

By: /s/

Jeffrey J. Prosser

Its President

PINACLE LIMITED

By: /s/

Jeffrey J. Prosser

Its President

COMSYS INTERNATIONAL LTD.

By: /s/

Jeffrey J. Prosser

Its President

K.I. MANAGEMENT LTD.

By: /s/

Jeffrey J. Prosser

Its President

KC INTERNATIONAL INC.

By: /s/

Jeffrey J. Prosser

Its President

TKH INTERNATIONAL LIMITED

By: /s/

Jeffrey J. Prosser

Its President

MINION CORPORATION N.V.

By: /s/

Jeffrey J. Prosser

Its President

VALVISION TELECOMMUNICA-
TIONS B.V.

By: /s/

Jeffrey J. Prosser

Its President

VALVISION SAS (VALVISION)

By: /s/

Jeffrey J. Prosser

Its President

AMZAK INTERNATIONAL LIMITED

By: /s/

Jeffrey J. Prosser

Its President

H.M. BEUK BELEGGINGEN B.V.

By: /s/

Jeffrey J. Prosser

Its President

ALTA B.V.

By: /s/

Jeffrey J. Prosser

Its President

ICC FRANCE S.A.

By: /s/

Jeffrey J. Prosser

Its President

CABLE EVASION 86 S.A.

By: /s/

Jeffrey J. Prosser

Its President

ATLANTIC AIRCRAFT, INC.

By: /s/

Jeffrey J. Prosser

Its President

IC AIR, INC.

By: /s/

Jeffrey J. Prosser

Its President

GROUP B–200, INC.

By: /s/

Jeffrey J. Prosser

Its President

COMMUNICATIONS SYSTEMS & SER-
VICES, INC.

By: /s/

Jeffrey J. Prosser

Its President

By: /s/

Jeffrey J. Prosser, individually

TERRITORY OF THE VIRGIN IS-
LANDS

ISLAND OF ST. CROIX

BE IT REMEMBERED, that on June 6, 2006, before me, the undersigned subscriber, personally appeared *Jeffrey J. Prosser* who, being by me duly sworn on his oath, deposed and made proof to my satisfaction that he executed the within instrument on behalf of himself, and there-

upon he acknowledged that he signed, sealed and delivered the same on behalf of himself as his voluntary act and deed, for the uses and purposes therein expressed.

/s/

TERRITORY OF THE VIRGIN ISLANDS

ISLAND OF ST. CROIX

BE IT REMEMBERED, that on June 6, 2006, before me, the undersigned subscriber, personally appeared *Jeffrey J. Prosser* who, being by me duly sworn on their oath, deposed and made proof to my satisfaction that he is the *President* of INNOVATIVE COMMUNICATION CORPORATION and is the person named in and who executed the within instrument on behalf of such entity, and thereupon they acknowledged that they signed, sealed and delivered the same in such capacity on behalf of such entity as its voluntary act and deed, for the uses and purposes therein expressed by virtue of authorization from its governing body.

/s/

TERRITORY OF THE VIRGIN ISLANDS

ISLAND OF ST. CROIX

BE IT REMEMBERED, that on June 6, 2006, before me, the undersigned subscriber, personally appeared *Jeffrey J. Prosser* who, being by me duly sworn on their oath, deposed and made proof to my satisfaction that he is the *President* of INNOVATIVE COMMUNICATION CORPORATION, a United States Virgin Islands corporation that was dissolved in December, 1998, and is the person named in and who executed the within instrument on behalf of such entity, and thereupon they acknowledged that they signed, sealed and delivered the same in such capacity on behalf of such entity as its

voluntary act and deed, for the uses and purposes therein expressed by virtue of authorization from its governing body.

/s/

TERRITORY OF THE VIRGIN ISLANDS

ISLAND OF ST. CROIX

BE IT REMEMBERED, that on June 6, 2006, before me, the undersigned subscriber, personally appeared *David Sharp* who, being by me duly sworn on their oath, deposed and made proof to my satisfaction that he is the Chairman and Chief Executive Officer of VIRGIN ISLANDS TELEPHONE CORPORATION d/b/a INNOVATIVE TELEPHONE and is the person named in and who executed the within instrument on behalf of such entity, and thereupon they acknowledged that they signed, sealed and delivered the same in such capacity on behalf of such entity as its voluntary act and deed, for the uses and purposes therein expressed by virtue of authorization from its governing body.

---

TERRITORY OF THE VIRGIN ISLANDS

ISLAND OF ST. CROIX

BE IT REMEMBERED, that on June 6, 2006, before me, the undersigned subscriber, personally appeared *Jeffrey J. Prosser* who, being by me duly sworn on their oath, deposed and made proof to my satisfaction that he is the *President* of INNOVATIVE COMMUNICATION COMPANY, LLC and is the person named in and who executed the within instrument on behalf of such entity, and thereupon they acknowledged that they signed, sealed and delivered the same in such capacity on behalf of such entity as its voluntary act and deed, for the uses and purposes therein expressed by virtue of authorization from its governing body.

/s/

TERRITORY OF THE VIRGIN IS-LANDS

ISLAND OF ST. CROIX

BE IT REMEMBERED, that on June 6, 2006, before me, the undersigned sub-scriber, personally appeared *Jeffrey J. Prosser* who, being by me duly sworn on their oath, deposed and made proof to my satisfaction that he is the *President* of EMERGING COMMUNICATIONS INC. and is the person named in and who exe-cuted the within instrument on behalf of such entity, and thereupon they acknowl-edged that they signed, sealed and deliv-ered the same in such capacity on behalf of such entity as its voluntary act and deed, for the uses and purposes therein ex-pressed by virtue of authorization from its governing body.

/s/

TERRITORY OF THE VIRGIN IS-LANDS

ISLAND OF ST. THOMAS

BE IT REMEMBERED, that on June 6, 2006, before me, the undersigned sub-scriber, personally appeared *Samuel Eb-besen* who, being by me duly sworn on their oath, deposed and made proof to my satisfaction that he is the Director and Secretary of VIRGIN ISLANDS TELE-PHONE CORPORATION d/b/a INNO-VATIVE TELEPHONE and is the person named in and who executed the within instrument on behalf of such entity, and thereupon they acknowledged that they signed, sealed and delivered the same in such capacity on behalf of such entity as its voluntary act and deed, for the uses and purposes therein expressed by virtue of authorization from its governing body.

/s/

TERRITORY OF THE VIRGIN IS-LANDS

ISLAND OF ST. CROIX

BE IT REMEMBERED, that on June 6, 2006, before me, the undersigned sub-scriber, personally appeared *Jeffrey J. Prosser* who, being by me duly sworn on their oath, deposed and made proof to my satisfaction that he is the *President* of INNOVATIVE COMMUNICATION COMPANY, LLC. and is the person named in and who executed the within instrument on behalf of such entity, and thereupon they acknowledged that they signed, sealed and delivered the same in such capacity on behalf of such entity as its voluntary act and deed, for the uses and purposes therein expressed by virtue of authorization from its governing body.

TERRITORY OF THE VIRGIN IS-LANDS

ISLAND OF ST. CROIX

BE IT REMEMBERED, that on June 6, 2006, before me, the undersigned sub-scriber, personally appeared *Jeffrey J. Prosser* who, being by me duly sworn on their oath, deposed and made proof to my satisfaction that he is the *President* of EMERGING COMMUNICATIONS INC. and is the person named in and who exe-cuted the within instrument on behalf of such entity, and thereupon they acknowl-edged that they signed, sealed and deliv-ered the same in such capacity on behalf of such entity as its voluntary act and deed, for the uses and purposes therein ex-pressed by virtue of authorization from its governing body.

TERRITORY OF THE VIRGIN IS-LANDS

ISLAND OF ST. CROIX

BE IT REMEMBERED, that on June 6, 2006, before me, the undersigned sub-scriber, personally appeared *Jeffrey J.*

*Prosser* who, being by me duly sworn on their oath, deposed and made proof to my satisfaction that he is the *President* of INNOVATIVE COMMUNICATION SUBSIDIARY COMPANY, LLC and is the person named in and who executed the within instrument on behalf of such entity, and thereupon they acknowledged that they signed, sealed and delivered the same in such capacity on behalf of such entity as its voluntary act and deed, for the uses and purposes therein expressed by virtue of authorization from its governing body.

/s/

TERRITORY OF THE VIRGIN IS-LANDS

ISLAND OF ST. CROIX

BE IT REMEMBERED, that on June 6, 2006, before me, the undersigned sub-scriber, personally appeared *Jeffrey J. Prosser* who, being by me duly sworn on their oath, deposed and made proof to my satisfaction that he is the *President* of BELIZE TELECOM LTD. and is the person named in and who executed the within instrument on behalf of such entity, and thereupon they acknowledged that they signed, sealed and delivered the same in such capacity on behalf of such entity as its voluntary act and deed, for the uses and purposes therein expressed by virtue of authorization from its governing body.

/s/

TERRITORY OF THE VIRGIN IS-LANDS

ISLAND OF ST. CROIX

BE IT REMEMBERED, that on June 6, 2006, before me, the undersigned sub-scriber, personally appeared *Jeffrey J. Prosser* who, being by me duly sworn on their oath, deposed and made proof to my satisfaction that he is the *President* of VITELCOM CELLULAR, INC. and is

the person named in and who executed the within instrument on behalf of such entity, and thereupon they acknowledged that they signed, sealed and delivered the same in such capacity on behalf of such entity as its voluntary act and deed, for the uses and purposes therein expressed by virtue of authorization from its governing body.

/s/

TERRITORY OF THE VIRGIN IS-LANDS

ISLAND OF ST. CROIX

BE IT REMEMBERED, that on June 6, 2006, before me, the undersigned sub-scriber, personally appeared *Jeffrey J. Prosser* who, being by me duly sworn on their oath, deposed and made proof to my satisfaction that he is the *President* of ST. CROIX CABLE TV, INC. and is the per-son named in and who executed the within instrument on behalf of such entity, and thereupon they acknowledged that they signed, sealed and delivered the same in such capacity on behalf of such entity as its voluntary act and deed, for the uses and purposes therein expressed by virtue of authorization from its governing body.

/s/

TERRITORY OF THE VIRGIN IS-LANDS

ISLAND OF ST. CROIX

BE IT REMEMBERED, that on June 6, 2006, before me, the undersigned sub-scriber, personally appeared *Jeffrey J. Prosser* who, being by me duly sworn on their oath, deposed and made proof to my satisfaction that he is the *President* of CARIBBEAN COMMUNICATIONS CORP. and is the person named in and who executed the within instrument on behalf of such entity, and thereupon they acknowledged that they signed, sealed and delivered the same in such capacity on behalf of such entity as its voluntary act and deed, for the uses and purposes there-

in expressed by virtue of authorization from its governing body.

/s/

TERRITORY OF THE VIRGIN IS-LANDS

ISLAND OF ST. CROIX

BE IT REMEMBERED, that on June 6, 2006, before me, the undersigned subscriber, personally appeared *Jeffrey J. Prosser* who, being by me duly sworn on their oath, deposed and made proof to my satisfaction that he is the *President* of INNOVATIVE LONG DISTANCE, INC. and is the person named in and who executed the within instrument on behalf of such entity, and thereupon they acknowledged that they signed, sealed and delivered the same in such capacity on behalf of such entity as its voluntary act and deed, for the uses and purposes therein expressed by virtue of authorization from its governing body.

/s/

TERRITORY OF THE VIRGIN IS-LANDS

ISLAND OF ST. CROIX

BE IT REMEMBERED, that on June 6, 2006, before me, the undersigned subscriber, personally appeared *Jeffrey J. Prosser* who, being by me duly sworn on their oath, deposed and made proof to my satisfaction that he is the *President* of ICC TV, INC. and is the person named in and who executed the within instrument on behalf of such entity, and thereupon they acknowledged that they signed, sealed and delivered the same in such capacity on behalf of such entity as its voluntary act and deed, for the uses and purposes therein expressed by virtue of authorization from its governing body.

/s/

TERRITORY OF THE VIRGIN IS-LANDS

ISLAND OF ST. CROIX

BE IT REMEMBERED, that on June 6, 2006, before me, the undersigned subscriber, personally appeared *Jeffrey J. Prosser* who, being by me duly sworn on their oath, deposed and made proof to my satisfaction that he is the *President* of DAILY NEWS PUBLISHING CO., INC. and is the person named in and who executed the within instrument on behalf of such entity, and thereupon they acknowledged that they signed, sealed and delivered the same in such capacity on behalf of such entity as its voluntary act and deed, for the uses and purposes therein expressed by virtue of authorization from its governing body.

/s/

TERRITORY OF THE VIRGIN IS-LANDS

ISLAND OF ST. CROIX

BE IT REMEMBERED, that on June 6, 2006, before me, the undersigned subscriber, personally appeared *Jeffrey J. Prosser* who, being by me duly sworn on their oath, deposed and made proof to my satisfaction that he is the *President* of ICUSC, INC. and is the person named in and who executed the within instrument on behalf of such entity, and thereupon they acknowledged that they signed, sealed and delivered the same in such capacity on behalf of such entity as its voluntary act and deed, for the uses and purposes therein expressed by virtue of authorization from its governing body.

/s/

TERRITORY OF THE VIRGIN IS-LANDS

ISLAND OF ST. CROIX

BE IT REMEMBERED, that on June 6, 2006, before me, the undersigned sub-

scriber, personally appeared *Jeffrey J. Prosser* who, being by me duly sworn on their oath, deposed and made proof to my satisfaction that he is the *President* of EXECUTIVE SECURITY SERVICES, INC. and is the person named in and who executed the within instrument on behalf of such entity, and thereupon they acknowledged that they signed, sealed and delivered the same in such capacity on behalf of such entity as its voluntary act and deed, for the uses and purposes therein expressed by virtue of authorization from its governing body.

/s/

TERRITORY OF THE VIRGIN IS-LANDS

ISLAND OF ST. CROIX

BE IT REMEMBERED, that on June 6, 2006, before me, the undersigned subscriber, personally appeared *Jeffrey J. Prosser* who, being by me duly sworn on their oath, deposed and made proof to my satisfaction that he is the *President* of WORLD SATELLITE GUADELOUPE S.A. and is the person named in and who executed the within instrument on behalf of such entity, and thereupon they acknowledged that they signed, sealed and delivered the same in such capacity on behalf of such entity as its voluntary act and deed, for the uses and purposes therein expressed by virtue of authorization from its governing body.

/s/

TERRITORY OF THE VIRGIN IS-LANDS

ISLAND OF ST. CROIX

BE IT REMEMBERED, that on June 6, 2006, before me, the undersigned subscriber, personally appeared *Jeffrey J. Prosser* who, being by me duly sworn on their oath, deposed and made proof to my satisfaction that he is the *President* of MARTINIQUE TV CABLE S.A. and is the person named in and who executed the within instrument on behalf of such entity, and thereupon they acknowledged that they signed, sealed and delivered the same in such capacity on behalf of such entity as its voluntary act and deed, for the uses and purposes therein expressed by virtue of authorization from its governing body.

/s/

TERRITORY OF THE VIRGIN IS-LANDS

ISLAND OF ST. CROIX

BE IT REMEMBERED, that on June 6, 2006, before me, the undersigned subscriber, personally appeared *Jeffrey J. Prosser* who, being by me duly sworn on their oath, deposed and made proof to my satisfaction that he is the *President* of MARTINIQUE CABLE MULTIMEDIA, SARL and is the person named in and who executed the within instrument on behalf of such entity, and thereupon they acknowledged that they signed, sealed and delivered the same in such capacity on behalf of such entity as its voluntary act and deed, for the uses and purposes therein expressed by virtue of authorization from its governing body.

/s/

TERRITORY OF THE VIRGIN IS-LANDS

ISLAND OF ST. CROIX

BE IT REMEMBERED, that on June 6, 2006, before me, the undersigned subscriber, personally appeared *Jeffrey J. Prosser* who, being by me duly sworn on their oath, deposed and made proof to my satisfaction that he is the *President* of B.V.I. CABLE T.V. LTD. and is the person named in and who executed the within instrument on behalf of such entity, and thereupon they acknowledged that they signed, sealed and delivered the same in

such capacity on behalf of such entity as its voluntary act and deed, for the uses and purposes therein expressed by virtue of authorization from its governing body.

/s/

TERRITORY OF THE VIRGIN IS-LANDS

ISLAND OF ST. CROIX

BE IT REMEMBERED, that on June 6, 2006, before me, the undersigned subscriber, personally appeared *Jeffrey J. Prosser* who, being by me duly sworn on their oath, deposed and made proof to my satisfaction that he is the President of CARIBBEAN TELEVIEW SERVICES N.V. and is the person named in and who executed the within instrument on behalf of such entity, and thereupon they acknowledged that they signed, sealed and delivered the same in such capacity on behalf of such entity as its voluntary act and deed, for the uses and purposes therein expressed by virtue of authorization from its governing body.

/s/

TERRITORY OF THE VIRGIN IS-LANDS

ISLAND OF ST. CROIX

BE IT REMEMBERED, that on June 6, 2006, before me, the undersigned subscriber, personally appeared *Jeffrey J. Prosser* who, being by me duly sworn on their oath, deposed and made proof to my satisfaction that he is the *President* of ST. MARTIN MOBILES S.A. and is the person named in and who executed the within instrument on behalf of such entity, and thereupon they acknowledged that they signed, sealed and delivered the same in such capacity on behalf of such entity as its voluntary act and deed, for the uses and purposes therein expressed by virtue of authorization from its governing body.

/s/

TERRITORY OF THE VIRGIN IS-LANDS

ISLAND OF ST. CROIX

BE IT REMEMBERED, that on June 6, 2006, before me, the undersigned subscriber, personally appeared *Jeffrey J. Prosser* who, being by me duly sworn on their oath, deposed and made proof to my satisfaction that he is the *President* of SMB BOATPHONE HOLDINGS LIMIT-ED and is the person named in and who executed the within instrument on behalf of such entity, and thereupon they acknowledged that they signed, sealed and delivered the same in such capacity on behalf of such entity as its voluntary act and deed, for the uses and purposes therein expressed by virtue of authorization from its governing body.

/s/

TERRITORY OF THE VIRGIN IS-LANDS

ISLAND OF ST. CROIX

BE IT REMEMBERED, that on June 6, 2006, before me, the undersigned subscriber, personally appeared *Jeffrey J. Prosser* who, being by me duly sworn on their oath, deposed and made proof to my satisfaction that he is the *President* of MOBARTON INVESTMENT N.V. and is the person named in and who executed the within instrument on behalf of such entity, and thereupon they acknowledged that they signed, sealed and delivered the same in such capacity on behalf of such entity as its voluntary act and deed, for the uses and purposes therein expressed by virtue of authorization from its governing body.

/s/

TERRITORY OF THE VIRGIN IS-LANDS

ISLAND OF ST. CROIX

BE IT REMEMBERED, that on June 6, 2006, before me, the undersigned subscriber, personally appeared *Jeffrey J. Prosser* who, being by me duly sworn on their oath, deposed and made proof to my satisfaction that he is the *President* of EAST CARIBBEAN CELLULAR N.V. and is the person named in and who executed the within instrument on behalf of such entity, and thereupon they acknowledged that they signed, sealed and delivered the same in such capacity on behalf of such entity as its voluntary act and deed, for the uses and purposes therein expressed by virtue of authorization from its governing body.

/s/

TERRITORY OF THE VIRGIN ISLANDS

ISLAND OF ST. CROIX

BE IT REMEMBERED, that on June 6, 2006, before me, the undersigned subscriber, personally appeared *Jeffrey J. Prosser* who, being by me duly sworn on their oath, deposed and made proof to my satisfaction that he is the *President* of EAST CARIBBEAN COMMUNICATIONS (ST. MAARTEN) N.V. and is the person named in and who executed the within instrument on behalf of such entity, and thereupon they acknowledged that they signed, sealed and delivered the same in such capacity on behalf of such entity as its voluntary act and deed, for the uses and purposes therein expressed by virtue of authorization from its governing body.

/s/

TERRITORY OF THE VIRGIN ISLANDS

ISLAND OF ST. CROIX

BE IT REMEMBERED, that on June 6, 2006, before me, the undersigned subscriber, personally appeared *Jeffrey J. Prosser* who, being by me duly sworn on their oath, deposed and made proof to my satisfaction that he is the *President* of EAST CARIBBEAN COMMUNICATIONS (BONAIRE) N.V. and is the person named in and who executed the within instrument on behalf of such entity, and thereupon they acknowledged that they signed, sealed and delivered the same in such capacity on behalf of such entity as its voluntary act and deed, for the uses and purposes therein expressed by virtue of authorization from its governing body.

/s/

TERRITORY OF THE VIRGIN ISLANDS

ISLAND OF ST. CROIX

BE IT REMEMBERED, that on June 6, 2006, before me, the undersigned subscriber, personally appeared *Jeffrey J. Prosser* who, being by me duly sworn on their oath, deposed and made proof to my satisfaction that he is the *President* of EAST CARIBBEAN COMMUNICATIONS (CURACAO) N.V. and is the person named in and who executed the within instrument on behalf of such entity, and thereupon they acknowledged that they signed, sealed and delivered the same in such capacity on behalf of such entity as its voluntary act and deed, for the uses and purposes therein expressed by virtue of authorization from its governing body.

/s/

TERRITORY OF THE VIRGIN ISLANDS

ISLAND OF ST. CROIX

BE IT REMEMBERED, that on June 6, 2006, before me, the undersigned subscriber, personally appeared *Jeffrey J. Prosser* who, being by me duly sworn on their oath, deposed and made proof to my satisfaction that he is the *President* of TODD INTERNATIONAL LTD. and is the person named in and who executed the

within instrument on behalf of such entity, and thereupon they acknowledged that they signed, sealed and delivered the same in such capacity on behalf of such entity as its voluntary act and deed, for the uses and purposes therein expressed by virtue of authorization from its governing body. /s/

TERRITORY OF THE VIRGIN IS-LANDS

ISLAND OF ST. CROIX

BE IT REMEMBERED, that on June 6, 2006, before me, the undersigned sub-scriber, personally appeared *Jeffrey J. Prosser* who, being by me duly sworn on their oath, deposed and made proof to my satisfaction that he is the *President* of ZUMBRO LIMITED and is the person named in and who executed the within instrument on behalf of such entity, and thereupon they acknowledged that they signed, sealed and delivered the same in such capacity on behalf of such entity as its voluntary act and deed, for the uses and purposes therein expressed by virtue of authorization from its governing body. /s/

TERRITORY OF THE VIRGIN IS-LANDS

ISLAND OF ST. CROIX

BE IT REMEMBERED, that on June 6, 2006, before me, the undersigned sub-scriber, personally appeared *Jeffrey J. Prosser* who, being by me duly sworn on their oath, deposed and made proof to my satisfaction that he is the *President* of PINACLE LIMITED and is the person named in and who executed the within instrument on behalf of such entity, and thereupon they acknowledged that they signed, sealed and delivered the same in such capacity on behalf of such entity as its voluntary act and deed, for the uses

and purposes therein expressed by virtue of authorization from its governing body. /s/

TERRITORY OF THE VIRGIN IS-LANDS

ISLAND OF ST. CROIX

BE IT REMEMBERED, that on June 6, 2006, before me, the undersigned sub-scriber, personally appeared *Jeffrey J. Prosser* who, being by me duly sworn on their oath, deposed and made proof to my satisfaction that he is the *President* of COMSYS INTERNATIONAL LTD. and is the person named in and who executed the within instrument on behalf of such entity, and thereupon they acknowledged that they signed, sealed and delivered the same in such capacity on behalf of such entity as its voluntary act and deed, for the uses and purposes therein expressed by virtue of authorization from its govern-ing body. /s/

TERRITORY OF THE VIRGIN IS-LANDS

ISLAND OF ST. CROIX

BE IT REMEMBERED, that on June 6, 2006, before me, the undersigned sub-scriber, personally appeared *Jeffrey J. Prosser* who, being by me duly sworn on their oath, deposed and made proof to my satisfaction that he is the *President* of K.I. MANAGEMENT LTD. and is the person named in and who executed the within instrument on behalf of such entity, and thereupon they acknowledged that they signed, sealed and delivered the same in such capacity on behalf of such entity as its voluntary act and deed, for the uses and purposes therein expressed by virtue of authorization from its governing body. /s/

TERRITORY OF THE VIRGIN IS-LANDS

104

ISLAND OF ST. CROIX

BE IT REMEMBERED, that on June 6, 2006, before me, the undersigned subscriber, personally appeared *Jeffrey J. Prosser* who, being by me duly sworn on their oath, deposed and made proof to my satisfaction that he is the *President* of KC INTERNATIONAL INC. and is the person named in and who executed the within instrument on behalf of such entity, and thereupon they acknowledged that they signed, sealed and delivered the same in such capacity on behalf of such entity as its voluntary act and deed, for the uses and purposes therein expressed by virtue of authorization from its governing body.

/s/

TERRITORY OF THE VIRGIN ISLANDS

ISLAND OF ST. CROIX

BE IT REMEMBERED, that on June 6, 2006, before me, the undersigned subscriber, personally appeared *Jeffrey J. Prosser* who, being by me duly sworn on their oath, deposed and made proof to my satisfaction that he is the *President* of TKH INTERNATIONAL LIMITED and is the person named in and who executed the within instrument on behalf of such entity, and thereupon they acknowledged that they signed, sealed and delivered the same in such capacity on behalf of such entity as its voluntary act and deed, for the uses and purposes therein expressed by virtue of authorization from its governing body.

/s/

TERRITORY OF THE VIRGIN ISLANDS

ISLAND OF ST. CROIX

BE IT REMEMBERED, that on June 6, 2006, before me, the undersigned subscriber, personally appeared *Jeffrey J. Prosser* who, being by me duly sworn on their oath, deposed and made proof to my satisfaction that he is the *President* of MINION CORPORATION N.V. and is the person named in and who executed the within instrument on behalf of such entity, and thereupon they acknowledged that they signed, sealed and delivered the same in such capacity on behalf of such entity as its voluntary act and deed, for the uses and purposes therein expressed by virtue of authorization from its governing body.

/s/

TERRITORY OF THE VIRGIN ISLANDS

ISLAND OF ST. CROIX

BE IT REMEMBERED, that on June 6, 2006, before me, the undersigned subscriber, personally appeared *Jeffrey J. Prosser* who, being by me duly sworn on their oath, deposed and made proof to my satisfaction that he is the *President* of VALVISION TELECOMMUNICATIONS B.V. and is the person named in and who executed the within instrument on behalf of such entity, and thereupon they acknowledged that they signed, sealed and delivered the same in such capacity on behalf of such entity as its voluntary act and deed, for the uses and purposes therein expressed by virtue of authorization from its governing body.

/s/

TERRITORY OF THE VIRGIN ISLANDS

ISLAND OF ST. CROIX

BE IT REMEMBERED, that on June 6, 2006, before me, the undersigned subscriber, personally appeared *Jeffrey J. Prosser* who, being by me duly sworn on their oath, deposed and made proof to my satisfaction that he is the *President* of VALVISION SAS (VALVISION) and is the person named in and who executed the within instrument on behalf of such entity,

and thereupon they acknowledged that they signed, sealed and delivered the same in such capacity on behalf of such entity as its voluntary act and deed, for the uses and purposes therein expressed by virtue of authorization from its governing body.

/s/

TERRITORY OF THE VIRGIN ISLANDS

ISLAND OF ST. CROIX

BE IT REMEMBERED, that on June 6, 2006, before me, the undersigned subscriber, personally appeared *Jeffrey J. Prosser* who, being by me duly sworn on their oath, deposed and made proof to my satisfaction that he is the *President* of AMZAK INTERNATIONAL LIMITED and is the person named in and who executed the within instrument on behalf of such entity, and thereupon they acknowledged that they signed, sealed and delivered the same in such capacity on behalf of such entity as its voluntary act and deed, for the uses and purposes therein expressed by virtue of authorization from its governing body.

/s/

TERRITORY OF THE VIRGIN ISLANDS

ISLAND OF ST. CROIX

BE IT REMEMBERED, that on June 6, 2006, before me, the undersigned subscriber, personally appeared *Jeffrey J. Prosser* who, being by me duly sworn on their oath, deposed and made proof to my satisfaction that he is the *President* of H.M. BEUK BELEGGINGEN B.V. and is the person named in and who executed the within instrument on behalf of such entity, and thereupon they acknowledged that they signed, sealed and delivered the same in such capacity on behalf of such entity as its voluntary act and deed, for the uses

and purposes therein expressed by virtue of authorization from its governing body.

/s/

TERRITORY OF TOE VIRGIN ISLANDS

ISLAND OF ST. CROIX

BE IT REMEMBERED, that on June 6, 2006, before me, the undersigned subscriber, personally appeared *Jeffrey J. Prosser* who, being by me duly sworn on their oath, deposed and made proof to my satisfaction that he is the *President* of ALTA B.V. and is the person named in and who executed the within instrument on behalf of such entity, and thereupon they acknowledged that they signed, sealed and delivered the same in such capacity on behalf of such entity as its voluntary act and deed, for the uses and purposes therein expressed by virtue of authorization from its governing body.

/s/

TERRITORY OF TOE VIRGIN ISLANDS

ISLAND OF ST. CROIX

BE IT REMEMBERED, that on June 6, 2006, before me, the undersigned subscriber, personally appeared *Jeffrey J. Prosser* who, being by me duly sworn on their oath, deposed and made proof to my satisfaction that he is the *President* of ICC FRANCE S.A. and is the person named in and who executed the within instrument on behalf of such entity, and thereupon they acknowledged that they signed, sealed and delivered the same in such capacity on behalf of such entity as its voluntary act and deed, for the uses and purposes therein expressed by virtue of authorization from its governing body.

TERRITORY OF THE VIRGIN ISLANDS

ISLAND OF ST. CROIX

BE IT REMEMBERED, that on June 6, 2006, before me, the undersigned subscriber, personally appeared *Jeffrey J. Prosser* who, being by me duly sworn on their oath, deposed and made proof to my satisfaction that he is the *President* of CABLE EVASION 86 S.A. and is the person named in and who executed the within instrument on behalf of such entity, and thereupon they acknowledged that they signed, sealed and delivered the same in such capacity on behalf of such entity as its voluntary act and deed, for the uses and purposes therein expressed by virtue of authorization from its governing body.

/s/

TERRITORY OF THE VIRGIN ISLANDS

ISLAND OF ST. CROIX

BE IT REMEMBERED, that on June 6, 2006, before me, the undersigned subscriber, personally appeared *Jeffrey J. Prosser* who, being by me duly sworn on their oath, deposed and made proof to my satisfaction that he is the *President* of ATLANTIC AIRCRAFT, INC. and is the person named in and who executed the within instrument on behalf of such entity, and thereupon they acknowledged that they signed, sealed and delivered the same in such capacity on behalf of such entity as its voluntary act and deed, for the uses and purposes therein expressed by virtue of authorization from its governing body.

/s/

TERRITORY OF THE VIRGIN ISLANDS

ISLAND OF ST. CROIX

BE IT REMEMBERED, that on June 6, 2006, before me, the undersigned subscriber, personally appeared *Jeffrey J. Prosser* who, being by me duly sworn on their oath, deposed and made proof to my

satisfaction that he is the *President* of IC AIR, INC. and is the person named in and who executed the within instrument on behalf of such entity, and thereupon they acknowledged that they signed, sealed and delivered the same in such capacity on behalf of such entity as its voluntary act and deed, for the uses and purposes therein expressed by virtue of authorization from its governing body.

/s/

TERRITORY OF THE VIRGIN ISLANDS

ISLAND OF ST. CROIX

BE IT REMEMBERED, that on June 6, 2006, before me, the undersigned subscriber, personally appeared *Jeffrey J. Prosser* who, being by me duly sworn on their oath, deposed and made proof to my satisfaction that he is the *President* of GROUP B–200, INC. and is the person named in and who executed the within instrument on behalf of such entity, and thereupon they acknowledged that they signed, sealed and delivered the same in such capacity on behalf of such entity as its voluntary act and deed, for the uses and purposes therein expressed by virtue of authorization from its governing body.

/s/

TERRITORY OF THE VIRGIN ISLANDS

ISLAND OF ST. CROIX

BE IT REMEMBERED, that on June 6, 2006, before me, the undersigned subscriber, personally appeared *Jeffrey J. Prosser* who, being by me duly sworn on their oath, deposed and made proof to my satisfaction that he is the *President* of COMMUNICATIONS SYSTEMS & SERVICES, INC. and is the person named in and who executed the within instrument on behalf of such entity, and thereupon they acknowledged that they signed, sealed and delivered the same in such capacity on

behalf of such entity as its voluntary act and deed, for the uses and purposes therein expressed by virtue of authorization from its governing body.

/s/

TERRITORY OF THE VIRGIN ISLANDS

ISLAND OF ST. CROIX

BE IT REMEMBERED, that on June 6, 2006, before me, the undersigned subscriber, personally appeared JEFFREY J. PROSSER who, being by me duly sworn on their oath, deposed and made proof to my satisfaction that he is the person named in and who executed the within instrument and thereupon acknowledged that they signed sealed and delivered the same as their voluntary act and deed for the uses and purposes therein expressed.

/s/

## SCHEDULE I

### PROSSER ENTITIES

Innovative Communication Subsidiary Company, LLC (a U.S. Virgin Islands limited liability company)

Belize Telecom Ltd. (a Belize limited liability company)

Vitelcom Cellular, Inc. (a U.S. Virgin Islands corporation)

St. Croix Cable TV, Inc. (a U.S. Virgin Islands corporation)

Caribbean Communications Corp. (a U.S. Virgin Islands corporation)

Innovative Long Distance, Inc. (a U.S. Virgin Islands corporation)

iCC TV, Inc. (a U.S. Virgin Islands corporation)

Daily News Publishing Co., Inc. (a U.S. Virgin Islands corporation)

ICUSC, Inc. (a U.S. Virgin Islands corporation)

Executive Security Services, Inc. (a U.S. Virgin Islands corporation)

World Satellite Guadeloupe S.A. (a French corporation)

Martinique TV Cable S.A. (a French corporation)

Martinique Cable Multimedia, SARL (a French limited liability company)

B.V.I. Cable T.V. Ltd. (a British Virgin Islands corporation)

Caribbean Teleview Services N.V. (a Netherlands Antilles corporation)

St. Martin Mobiles S.A. (a French corporation)

SMB Boatphone Holdings Limited (a British Virgin Islands corporation)

Mobarton Investment N.V. (a Netherlands Antilles corporation)

East Caribbean Cellular N.V. (a Netherlands Antilles corporation)

East Caribbean Communications (St. Maarten) N.V. (a Netherlands Antilles corporation)

East Caribbean Communications (Bonaire) N.V. (a Netherlands Antilles corporation)

East Caribbean Communications (Curacao) N.V. (a Netherlands Antilles corporation)

Todd International Ltd. (a British Virgin Islands international business corporation)

Zumbro Limited (a British Virgin Islands international business corporation)

Pinacle Limited (a British Virgin Islands international business corporation)

COMSYS International Ltd. (a British Virgin Islands international business corporation)

K.I. Management Ltd. (a British Virgin Islands international business corporation)

KC International Inc. (a British Virgin Islands international business corporation)

TKH International Limited (a British Virgin Islands international business corporation)

Minion Corporation N.V. (a Netherlands Antilles corporation)

Valvision Telecommunications B.V. (a Dutch corporation)

Valvision SAS (Valvision) (a French corporation)

Amzak International Limited (a Bahamian company)

H.M. Beuk Beleggingen B.V. (a Dutch corporation)

Alta B.V. (a Dutch corporation)

ICC France S.A. (a French corporation)

Cable Evasion 86 S.A. (a French corporation)

Atlantic Aircraft, Inc. (a U.S. Virgin Islands corporation)

1C Air, Inc. (a Delaware corporation)

Group B–200, Inc. (a Puerto Rico corporation)

Communications Systems & Services, Inc. (a Florida corporation)

## SCHEDULE II

### LEGAL COUNSEL FOR THE GREEN-LIGHT ENTITIES INCLUDED WITH-IN RELEASED PARTIES

Matthew J. Duensing

Stryker, Duensing, Casner & Dollison

Upper Level Drake's Passage

P.O. Box 6785

St. Thomas, U.S. Virgin Islands 00804

Thomas J. Allingham II

Gregg M. Galardi

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

One Rodney Square

P.O. Box 636

Wilmington, Delaware 19899

## SCHEDULE III

### ADDITIONAL NON–BANKRUPTCY PROCEEDINGS

A.  Each of the following actions pending in the *United States District Court of the Virgin Islands, Division of St. Thomas and St. John:*

1.  Cause No. 2006–cv–018; *Virgin Islands Telephone Corporation v. Rural Telephone Finance Cooperative, National Rural Utilities Cooperative Finance Corporation, Greenlight Capital Qualified, L.P., Greenlight Capital L.P., and Greenlight Capital Offshore, Ltd.*

2.  Cause No. 2006–cv–034; *Emerging Communications, Inc. and Innovative Communication Company, LLC v. Greenlight Capital Qualified L.P., Greenlight, Capital, L.P., and Greenlight Capital Offshore, Ltd.*

B.  *In Re Emerging Communications, Inc. v. Greenlight,* No. 42 cv–06 and 43 cv–06, pending in the *Superior Court of the Virgin Islands.*

C.  *Emerging Communications, Inc., Innovative Communication Corporation, Innovative Communication Company, LLC, and Jeffrey J. Prosser v. Greenlight Capital Qualified L.P., Greenlight Capital L.P., and Greenlight Capital Offshore, Ltd.,* Case No. 2006CA000185, in the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida, General Jurisdiction Division.

## ORDER GRANTING PRELIMINARY AND PERMANENT INJUNCTIONS WITH RESPECT TO ALLEGATIONS IN ADVERSARY NO. 10–50744

AND NOW, this **15th** day of **December, 2011**, for the reasons expressed in the foregoing Memorandum Opinion it, is **ORDERED, ADJUDGED and DECREED** that Plaintiffs' Motions for Preliminary Injunction at Adv. Doc. Nos. 34 and 76 are **GRANTED** and Defendants are preliminarily enjoined from pursuing the action at Adv. No. 10–50744 and any and all claims, causes of action and actions asserted therein or which would violate the Prosser Releases of RTFC and Greenlight.

It is **FURTHER ORDERED, ADJUDGED** and **DECREED** that Defendants are permanently enjoined from pursuing the action at Adv. No. 10–50744 and any and all claims, causes of action and actions asserted therein or which would violate the Prosser Releases of RTFC and Greenlight. A separate order will be entered dismissing that adversary with prejudice.

## ORDER DISMISSING ADVERSARY WITH PREJUDICE

AND NOW, this **15th** day of **December, 2011**, for the reasons stated in the foregoing Memorandum Opinion, it is **ORDERED, ADJUDGED and DECREED** that the above captioned Adversary is **dismissed with prejudice.**